LUNDE, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–386–CR. Submitted on briefs September 7, 1978.—
Decided October 3, 1978.*
(Also reported in 270 N.W.2d 180.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg*, state public defender, and *Melvin F. Greenberg*, assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Maryann S. Calef*, assistant attorney general.

HEFFERNAN, J. Randy Lunde was convicted on February 11, 1976, of delivering on May 9, 1975, a Schedule III controlled substance, Phencyclidine (PCP), contrary to sec. 161.41(1)(b), Stats. The jury trial was presided over by Judge Allen Kinney, who imposed an indeterminate sentence of not more than three years. Subsequent to the death of Judge Kinney, the defendant's post-conviction motions were denied by an order of Judge Weisel. Writs of error were issued to review the judgment of conviction and the order denying post-conviction motions.

The facts developed at the jury trial showed that Joseph M. Jovonovich, a special agent for the Drug Enforcement Administration of the United States Department of Justice, was asked to do undercover work in Polk county during 1975 at the request of Wisconsin's law enforcement officers. On May 9, 1975, an informer named James Anderson introduced Jovonovich to a person then identified as "Dandy." "Dandy" was thought to be a possible source of or dealer in controlled drugs. After the introduction took place in the men's room of the Slush Pump Bar at Frederic, Wisconsin, "Dandy," later identified as the defendant Lunde, asked Jovonovich if he wanted to try some "dust." At trial Jovonovich testified that "dust" or "angel dust" was the street name for Phencyclidine or PCP, a Schedule III controlled substance. After Jovonovich expressed interest, Lunde went to a motorcycle, which he had driven to the Slush Pump Bar, and removed a plastic bag containing five small tinfoil packets from the motorcycle luggage rack.

Jovonovich testified that Lunde stated that the "dust" was of high quality and would produce a great hallucino-

genic effect. After some negotiations, Agent Jovonovich paid $30 for the five packets and received them from Lunde. Jovonovich noted the license number of the motorcycle, and it was later determined that the motorcycle was registered in the name of Randy Lunde. The contents of the packets were tested by the Wisconsin Crime Laboratory and determined to be Phencyclidine.

At trial, Lunde took the stand and denied that he had ever seen Jovonovich prior to the institution of criminal proceedings. He denied the charges in their entirety; he denied knowing James Anderson; and he denied knowing what Phencyclidine was and stated that to him "dust" meant dirt. He stated that he did not know where he was on May 9th. He also conceded on cross-examination that he had sent a letter to a motorcycle repair shop in Grantsburg, Wisconsin, in an attempt to elicit a statement from the owner of the shop that his motorcycle was in the shop until May 11, 1975. In response to a question on cross-examination, he denied that he owed money for repairs at the cycle shop.

Richard Queener, the owner of the cycle shop, was called as a rebuttal witness to testify that the original bill for cycle repairs was paid on May 9, 1975, and that he believed that the motorcycle was picked up on the same day. Over the objection of the defendant, he was permitted to testify that, at a later date, the defendant brought his cycle to the shop and that, at the time of the trial, there was still outstanding a repair bill for $18.47. This testimony was permitted after the prosecutor pointed out that Queener's testimony would contradict the defendant's statement that he did not owe any money at the shop.

Over objection, James Anderson, the informer, was called as a rebuttal witness. Defense counsel's objection was based on the fact that the state had previously notified the defense that it would call three witnesses but

had not mentioned Anderson as a possible witness. The prosecutor stated that he had not intended to call Anderson, he did not know where Anderson was until after the trial commenced, and it was only after the defendant elected to take the stand and denied knowing Anderson that the decision was reached to call Anderson in rebuttal.

Upon the trial judge's ruling that Anderson would be permitted to testify on rebuttal, the defendant asked for a ten-day adjournment of the trial, during which the defense wished to interview Anderson and to prepare defense witnesses to counter Anderson's proposed testimony. Relying upon the provisions of sec. 971.23(3), Stats., the court declined the request for an adjournment and stated that the statute, which provides for the disclosure of witnesses prior to trial, is inapplicable to rebuttal witnesses or to witnesses who are called for impeachment only. Anderson then testified that he had met "Dandy" on three occasions at the Slush Pump Bar and, on the third occasion, he introduced "Dandy" (identified at trial as Lunde) to Jovonovich on May 9, 1975. Positive identification of Lunde as "Dandy" was made by Jovonovich, as well as Anderson.

The jury returned a verdict which found "defendant Randy L. Lunde guilty of unlawfully delivering a controlled substance, namely, Phencyclidine, to Joseph M. Jovonovich as charged in the information."

The above recounting of the elements of the trial, as gleaned from the record, demonstrates that only the identification of Lunde as "Dandy," who delivered the PCP, was an issue in the trial. It was not contested that PCP was the substance delivered and that the person who delivered the substance to Jovonovich represented it as PCP. Lunde's defense was simply that he was not at the Slush Pump Bar at the time and place in question, that he had never seen Jovonovich before, and that he

did not know Anderson. He denied knowing that "dust" was street jargon for PCP.

It is in the context of the record, where identification was the sole issue, that we are obliged to approach the defendant's principal contention on this appeal.

Although no specific objection was made at trial to the jury instructions, it is now argued, as it was at the hearing on the post-conviction motions, that the instructions to the jury were fatally defective, because they misstated the law. The claim is that it was error for the trial judge to fail to instruct the jury that for a finding of guilty the defendant must be found to know that the substance which he delivered was PCP. Counsel on this appeal acknowledges that the jury was correctly instructed that, in order to return a verdict of guilty, it must find beyond a reasonable doubt that the defendant delivered a controlled substance and that he knew it was a controlled substance. Counsel argues that the instructions were insufficient, that the defendant must also know the controlled substance was PCP. The record shows that the instruction was not given to the jury in the manner that appellate defense counsel contends was necessary.

The record demonstrates that the instructions were discussed in chambers on more than one occasion prior to submission to the jury. No specific objection was made to any of the instructions by defense counsel. In the course of the conferences, the district attorney asserted that it was not necessary for the jury to be instructed that the defendant specifically knew that the substance was Phencyclidine if it could find that he knew it was a controlled substance. The only response to this by counsel was a somewhat garbled statement:

"[W]e believe on the information which states specifically Phencyclidine. I believe the information as filed by the district attorney should entitle him to the same

type of jury verdict as he charged—he was going to prove."

At a later point in the proceedings, the prosecutor asked that the court take judicial notice of the fact that Phencyclidine is a Schedule III controlled substance under ch. 161, Stats. No objection was taken by defense counsel to the prosecutor's request, and the verdict returned by the jury was in the form apparently requested by defense counsel, for it followed in substance the phraseology of the information in that it incorporated the words, "controlled substance, namely Phencyclidine."

It is clear that the defendant got exactly the form of verdict that apparently he asked for—a verdict which required the jury not only to find that Lunde delivered a controlled substance, but that he delivered the drug known as Phencyclidine. It is equally clear, however, that the instruction did not expressly require the jury to separately find that Lunde knew the substance was Phencyclidine, even though it required a finding that Lunde knew the chemical delivered was a controlled substance.

Nothing in the record demonstrates that the defendant objected to either the form or the substance of the jury instructions in a manner that would have called to the court's attention the now asserted position that the defendant had to know the exact nature of the controlled substance he delivered. Counsel on this appeal contends, however, that, even though there was no objection, the waiver rule is inapplicable where the instructions to the jury constitute a misstatement of the law.

The appropriate rule cannot be so simplistically stated. The appropriate test is that set forth in *Claybrooks v. State*, 50 Wis.2d 79, 84–5, 183 N.W.2d 139 (1971):

"It is well established that even where there is no timely objection in the trial court, errors in instruction may be reviewed on appeal, even on the court's own motion, where the error is so plain or fundamental as to affect substantial rights of the defendant. Of course, a defendant is faced with a heavy burden when he has acquiesced in the instructions given by the trial court. We conclude to exercise our discretionary power of review in the instant case and to do so notwithstanding the plain waiver of the alleged error by the defendant. In doing so, the defendant must show that his substantial rights have been affected."

Under this test, the question then becomes not whether the unobjected-to instructions were erroneous, but whether the error was so plain or fundamental as to affect the substantial rights of the defendant. The application of this test necessarily results in a process of circuitous reasoning, for the rule is that the alleged error will not be looked into if no objection has been appropriately made; but the exception to the rule provides that, even where no objection has been made, the court will take cognizance of the alleged error if the error is plain or fundamental. Obviously, therefore, the nature of the error must be inquired into before it can be determined whether the court will consider it further.

In the instant case, the alleged error concerned a matter not an issue at trial. The evidence uncontrovertibly pointed to the fact that the person identified as "Dandy" sold the substance to Jovonovich as PCP. "Dandy" knew that the substance was PCP, and "Dandy" was positively identified as the defendant Lunde. In open court in the presence of the jury, without objection, the trial judge was permitted to take judicial notice of the fact that included in Schedule III was the controlled substance known as PCP. Under this state of facts, it is impossible to conclude that any right of the defendant to a fair

trial was infringed upon by the allegedly defective instructions. Certainly, the error, if it be one, was not plain or fundamental, and the defendant has not even attempted to demonstrate, as he must under *Claybrooks*, that his substantial rights have been affected.

It is undoubtedly true that the possibility of an erroneous instruction will be avoided by strict adherence to Wis J I—Criminal, Part II, 6035, which provides that the jury be instructed that "the defendant knew or believed that it was *(name controlled substance)*." However, an examination of *State v. Christel*, 61 Wis.2d 143, 211 N.W.2d 801 (1973), from which the instruction stems, makes it clear that this court in that case was concerned not with the mere facade of due process, but the substance of it.

The opinion of that case, p. 159, indeed states:

"Under sec. 161.30(12)(d), Stats. 1969, the prosecution must prove not only that the defendant is in possession of a dangerous drug but also that he knows or believes that he is."

In *Christel*, however, the question before the jury was not whether the defendant knew the nature of a controlled drug admittedly in his possession, but whether he knew that the substance was marijuana, as contrasted to some completely innocuous or uncontrolled substance. That situation is wholly absent here. Nothing was raised in the instant trial that casts the slightest doubt that the substance delivered was PCP or that "Dandy" knew it was PCP. The only question was the identity of the person who made the delivery.

*Christel* relied upon the case of *Wright v. Edwards*, 470 F.2d 980 (5th Cir. 1972). That case, in the part relevant to this case, stated:

"While intent in the traditional common law sense of a 'guilty mind' is not a constitutional requisite under a [possession of marijuana statute], due process demands

that the state show a specific intent to possess the prohibited substance, that is, that the act was purposely, not accidently done." (p. 981)

The very purpose of the *Christel* rule, that is, to make sure that there be a specific intent to possess or deliver a prohibited substance, was not at issue in the instant case, nor was there any intimation that the delivery of the controlled substance was innocent, inadvertent, or accidental. No due process rights of the defendant in this case were infringed by the instruction as given by the trial judge.

Moreover, we cannot conclude that the instructions as given were erroneous or misstated, even when viewed from a technical aspect. The trial judge stated that the jury must find:

". . . that the defendant knew that, or believed that, the substance which the State claims he delivered to Joseph M. Jovonovich was a controlled substance. It must be found beyond a reasonable doubt that the defendant believed or knew that the substance which he is alleged to have delivered was a controlled substance."

The next two sentences of the judge's instruction to the jury stated:

"The State has alleged and attempted to prove that the drug delivered by defendant was a drug known as Phencyclidine. Phencyclidine is a controlled substance."

Summing up the elements of the charge, the court said:

"If you are satisfied beyond a reasonable doubt that the defendant *knowingly* delivered a controlled substance *as I have defined those terms to you* . . . then you should find the defendant guilty." (Emphasis supplied.)

We find no error in the instructions.

■

As the recapitulation of the evidence set forth in this opinion demonstrates, the defendant objected at trial to the admission of the rebuttal testimony of James Anderson when the state's pretrial notice setting forth the names of proposed witnesses did not include Anderson. Additionally, the defense claimed the error because the trial court denied the motion for a continuance to permit a mid-trial interview of Anderson by the defense. We find no error in permitting Anderson to testify on rebuttal and to testify without a mid-trial continuance.

■

Sec. 971.23 (3) (a), Stats., provides for the pretrial disclosure of witnesses in criminal trials. That statute, however, contains the proviso, "This section shall not apply to rebuttal witnesses or those called for impeachment only."

■

Moreover, this court has previously held that the state has no duty to provide the names of bona fide rebuttal witnesses regardless of any demand of the defendant. *Hough v. State,* 70 Wis.2d 807, 816, 235 N.W.2d 534 (1975), and *Caccitolo v. State,* 69 Wis.2d 102, 115, 230 N.W.2d 139 (1975). Such was the rule even prior to the passage of the statute. *Cheney v. State,* 44 Wis.2d 454, 171 N.W.2d 339, 174 N.W.2d 1 (1969).

While this court has suggested in *Caccitolo, supra* p. 118, that it would be inappropriate to reserve a witness who would normally be used in the case-in-chief for rebuttal and that the use of such a witness for dramatic effect might make inapplicable the rule requiring disclosure of rebuttal witnesses, such is not the situation here.

In the instant case, Anderson was a bona fide rebuttal witness. He was not necessary for the state's case-in-

chief, and Anderson's testimony was only necessary and appropriate when defendant took the stand and denied that he knew James Anderson and attempted to create a doubt in respect to his whereabouts on May 9, 1975.

We also conclude that the defendant's claim that error was committed when he was denied a mid-trial continuance to interview Anderson is without merit. While the defendant has the right to interview a witness before trial, mid-trial access lies within the discretion of the court and is not a matter of right. *See, State v. Davidson,* 44 Wis.2d 177, 188, 170 N.W.2d 755 (1969) ; *State v. Lenarchick,* 74 Wis.2d 425, 454, 247 N.W.2d 80 (1976). We see no abuse of discretion in the trial judge's refusal to permit a continuance for a mid-trial interview of a bona fide rebuttal witness.

The testimony of Richard Queener, the operator of the motorcycle repair shop, is also objected to. We conclude that the appearance of Queener in rebuttal was appropriate. A substantial factor in the identification of Lunde was the motorcycle and the motorcycle's registration to Lunde. Moreover, the defendant's testimony attempted to create the impression that his motorcycle was not in Frederic at the Slush Pump Bar on the night of May 9, 1975, when the PCP was delivered but was in Queener's repair shop at Grantsburg. This testimony, if unrebutted, could have undermined Jovonovich's identification of the defendant. The testimony of Queener concerning the whereabouts of Lunde's motorcycle on May 9, 1975, was properly admitted in rebuttal. Queener, however, was also permitted to testify that the defendant had an outstanding bill at the repair shop on the date of trial. The admission of this testimony was relevant, in that it contradicted Lunde's testimony that he did not have a bill outstanding. It, however, concerned a collateral matter which could not have been

introduced other than for contradiction purposes. *State v. Spraggin*, 71 Wis.2d 604, 623, 239 N.W.2d 297 (1976).

As Wigmore pointed out, extrinsic evidence offered for the purpose of rebutting testimony on collateral matters should be excluded in the interest of saving time. 3A Wigmore, *Evidence*, secs. 1001 and 1002 (1970). In addition, the admission of collateral evidence can in some circumstances be highly prejudicial. See, *McClelland v. State*, 84 Wis.2d 145, 267 N.W.2d 843 (1978). In the instant case, however, while the collateral impeaching evidence would tend to show that Lunde had failed to pay a bill he said he had paid, it was also peripherally prejudicial and should not have been admitted. It was not, however, so prejudicial as to require reversal. The error was, at the most, trivial and not prejudicial under the facts of the case. It was largely irrelevant. Under any test of harmless error, the statement of Queener that the defendant had an outstanding bill was nonprejudicial. It can be said beyond a reasonable doubt that such evidence did not contribute in any way to the jury's finding of the defendant's guilt. The error did not affect any substantial right and was harmless. *See*, sec. 901.03(1), Stats.

The same reasoning leads to the conclusion that the defendant is not entitled to a new trial in the interest of justice. A new trial in the interest of justice will only be granted if it appears that there has been a miscarriage of justice and that a new trial under optimum circumstances will produce a different result. *Okrasinski v. State*, 51 Wis.2d 210, 219, 186 N.W.2d 314 (1971).

We are satisfied that the trial as conducted was free of any prejudicial error and that a new trial under optimum circumstances would produce the same result. No miscarriage of justice has been demonstrated.

*By the Court.*—Judgment and order affirmed.