STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard N. KONKOL, Defendant-Appellant.†

Court of Appeals

*No. 01–2126–CR. Submitted on briefs January 2, 2002.—
Decided June 19, 2002.*

**2002 WI App 174**

(Also reported in 649 N.W.2d 300.)

† Petition to review denied 9-3-02.

725

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Brian C. Hough* of *Robinson Law Firm* of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Carissa J. Kuecherer*, assistant district attorney.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J.   In this OWI case, the State anticipated before trial what the theory of the defense would be and planned to rebut the theory by use of expert witness testimony. The issue we face on appeal, one of first impression in Wisconsin, is whether the State was required to disclose a known and anticipated rebuttal witness regardless of the statement in WIS. STAT. § 971.23(1)(d) (1999–2000)[1] that the duty to disclose expert witnesses "does not apply to rebuttal witnesses or those called for impeachment only." We determine that the discovery statute places no duty on a prosecutor to list a rebuttal witness even if he or she knows before trial that the witness will be called. To put it bluntly, the defense takes its chances when offering a theory of defense and the State can keep knowledge of its legitimate rebuttal witnesses from the defendant without violating § 971.23(1)(d).

¶ 2.   Richard N. Konkol's fourth conviction of OWI stems from his arrest on December 11, 2000. At trial, City of Menasha police officer Tim Seaver testified that he stopped Konkol because Konkol's vehicle had crossed the center line. Noticing that Konkol's eyes were bloodshot and that his breath smelled of alcohol, Seaver conducted field sobriety tests. Seaver then arrested Konkol and transported him to the police station. At the station, Konkol underwent an Intoximeter test and blew 0.12%. At the time, Konkol claimed to have consumed only one alcoholic drink before being pulled

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. Although this case was originally a one-judge appeal, we ordered that this case be made a three-judge appeal pursuant to WIS. STAT. § 809.41(3). The attorney general elected to participate and filed a supplemental brief.

over. He was charged with operating while intoxicated and operating with a prohibited alcohol concentration.

¶ 3. Prior to trial, Konkol made a discovery demand that included a list of all witnesses and their addresses whom the district attorney intended to call at trial. At trial, the State's case-in-chief consisted of Seaver's testimony and the Intoximeter results. After the State rested, Konkol asserted his theory of defense that he had consumed only one alcoholic drink at a local restaurant and therefore could not have had a blood alcohol concentration of 0.12%. To corroborate his testimony, he called several individuals who were with him that evening, including the waitress and the bartender. They all supported his claim that he had consumed only one rum and coke.

¶ 4. In rebuttal, the State attempted to call an expert witness and made the following offer of proof:

> [W]e can qualify her as an expert . . . in terms of the intoximeter machine itself, she's also qualified to perform calculations with respect to alcohol concentration and body given a variety of facts such as the defendant's weight, how much he has consumed as far as food, how much he has had to drink and when. Essentially, I want to prove to the jury that it's impossible for the defendant to have a blood alcohol level of .12 when he's only consumed one drink.

¶ 5. Defense counsel objected to the State's rebuttal witness on the ground that the expert was not listed as a witness in the response to his discovery demand. The trial court concurred, stating that the prosecutor was trying to "get[] kind of around the discovery request here by couching this in terms of the rebuttal when actually it's not really rebuttal." The trial court reasoned that the State had anticipated the defense theory before trial and had known the expert would be

called to testify. Therefore, the State had a duty to disclose the witness to prevent unfair surprise and prejudice.

¶ 6. The prosecutor responded that she had no idea before trial if Konkol's defense strategy would continue to be his "only one drink" assertion or whether he would present a different theory. As it turned out, the prosecutor argued, the expert's testimony would be proper rebuttal because it would directly respond to the credibility of Konkol's testimony that he only had one drink.

¶ 7. The trial court ruled against the State with the following comments:

> I am not going to allow the testimony, I find it's a surprise, that it wasn't disclosed ahead of time, that this evidence could have been proffered during the case in chief, that this isn't a defense that is new to the prosecution, and whether [the district attorney] was going to use it as rebuttal after the conclusion of the defendant's case or during her case in chief here, that that should have been disclosed to [defense counsel].

¶ 8. Nevertheless, the trial court sua sponte suggested to the prosecutor that she would be allowed to put into evidence a blood alcohol chart that we have previously ruled is so accurate that judicial notice may be taken of its trustworthiness. *See State v. Hinz*, 121 Wis. 2d 282, 286–87, 360 N.W.2d 56 (Ct. App. 1984); *see also* Wis JI—Criminal 237. The trial court reasoned that the chart conveyed the same message that the testimony of the live witness would have provided. The prosecutor reluctantly agreed to use the chart instead of the witness. Konkol objected to the chart on the same grounds he objected to the expert, that it should have been part of the State's case-in-chief and he should have

received notice of the State's intention to use it. The objection was overruled and the jury found Konkol guilty of operating a motor vehicle with a prohibited alcohol concentration.

¶ 9. On appeal, Konkol argues that the trial court erred by allowing the blood alcohol chart to go to the jury. In essence, he contends that the trial court's sua sponte suggestion to substitute the chart for the expert was a misuse of discretion that nullified the original ruling pertaining to the State's expert.[2] In order to address this argument, we must first determine

[2] The district attorney's brief saw the main issue as whether the trial court's admission of the blood alcohol chart in the State's rebuttal constituted unfair surprise in violation of the criminal discovery statute, WIS. STAT. § 971.23. The district attorney argued that the chart was so commonly used in OWI cases that its use should have been presumed by defense counsel. The attorney general argued that since the chart was equally accessible to both parties, it was not material information "within the custody or control of the State" as required by the statute, and was therefore not subject to disclosure under the statute. The attorney general also contended that the chart did not constitute "physical evidence" as required by the statute since it was not created specifically for a party in connection with a particular case. The attorney general further asserted that since the prosecutor did not intend to offer the physical evidence at the trial, as required by § 971.23(1)(g), disclosure was not necessary. While we realize that our response to these arguments are dicta, for what it is worth, we agree with the attorney general. While Konkol's brief could be read to suggest that admission of the chart violated § 971.23, we view the crux of his argument differently. We understand Konkol to argue that the trial court's sua sponte suggestion to use the blood alcohol chart was a misuse of discretion because it gutted the trial court's original ruling keeping out the expert evidence. Therefore, the proper focus by this court is not on the blood alcohol chart, but on Konkol's theory of why the chart was an

whether the trial court correctly ruled the expert could not take the stand because the State violated the discovery statute.

¶ 10. We thus arrive at the central question in this case, which is must the State disclose an expert witness it knows and anticipates using in rebuttal regardless of the discovery rule stating that the duty to disclose does not apply to rebuttal witnesses? This question has been raised in other jurisdictions,[3] but has not been clearly addressed in Wisconsin. For the reasons set forth below, we determine that there is no duty on the part of the prosecutor to list legitimate rebuttal witnesses that he or she anticipates using at trial to counter the defendant's theory of defense.

¶ 11. The well-established rule in Wisconsin is that the State has no duty to provide the names of bona fide rebuttal witnesses regardless of any demand by the defendant. *Lunde v. State*, 85 Wis. 2d 80, 91, 270 N.W.2d 180 (1978). In *Lunde*, the defendant objected at trial to the admission of the rebuttal testimony of an informant when the State's pretrial notice setting forth the names and addresses of proposed witnesses did not include the informant's name. Relying on Wis. Stat. § 971.23(3)(a) (1976) and its exception for rebuttal witnesses, the court determined that the informant was a bona fide rebuttal witness. *Lunde*, 85 Wis. 2d at 91. He was not

attempt to skirt the violation of the discovery statute. As we hold, however, there was no violation.

[3] *Compare State v. White*, 444 P.2d 661, 667 (Wash. 1968) (holding that State need not disclose before trial expert witness who offers "genuine" rebuttal testimony) *with McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 179 (Ind. 1993) (requiring disclosure of rebuttal witnesses that are known and anticipated before trial).

necessary for the State's case-in-chief and was only necessary and appropriate once the defendant took the stand and denied knowing the witness. *Id.* at 91–92.

¶ 12.   The court in *Lunde* took no notice of the fact that the State must have known of the informant's existence prior to trial. While the prosecutor stated that he did not know where the witness was until after the trial commenced, *id.* at 85, this also was irrelevant to the decision. The main concern in *Lunde* was that the witness offered true rebuttal testimony and had not been held back from the State's case-in-chief for dramatic effect.[4]

¶ 13.   Another case on point is *State v. Moriarty*, 107 Wis. 2d 622, 321 N.W.2d 324 (Ct. App. 1982). Moriarty and an accomplice allegedly beat and robbed an acquaintance while riding in a car. *Id.* at 624. In his defense, Moriarty presented testimony of the accomplice who suggested that the victim's injuries resulted from a sudden stop while they were driving around the countryside. *Id.* at 626. On rebuttal, the prosecutor offered the victim's medical records into evidence to show that a sudden stop could not have caused the extensive injuries. *Id.* The defense objected because the records had not been supplied in response to the defense's discovery demand. *Id.*

¶ 14.   On appeal, we agreed with the trial court that the question of the source of the victim's injuries was raised for the first time by the defense, and the records were offered only to impeach the accomplice's

---

[4] In *Caccitolo v. State*, 69 Wis. 2d 102, 118, 230 N.W.2d 139 (1975), the supreme court suggested that it would be inappropriate to reserve a witness who would normally be used in the State's case-in-chief for rebuttal and that the use of such a witness for dramatic effect might make inapplicable the rule exempting disclosure of rebuttal witnesses.

testimony in that regard. *Id.* at 628. Furthermore, we determined that the contents of the medical records simply constituted a statement by the victim's treating physician as to the nature and extent of the victim's injuries. *Id.* We concluded that under Wis. Stat. § 971.23(3)(a) (1979–80), the testimony of the physician himself on rebuttal would not have been barred. *Id.* In other words, the prosecutor would have had no duty to disclose the doctor before trial as long as his testimony was proper rebuttal.

¶ 15.　We glean from *Lunde* and *Moriarty* that the focus of the disclosure inquiry is not on whether the State correctly anticipated the defense strategy beforehand, but on whether the proffered testimony is bona fide rebuttal evidence. Therefore, it is a logical extension of those cases to now recognize that the State has no duty to disclose a legitimate rebuttal witness, even when the State knows the defense strategy in advance and anticipates using the witness at trial. Professor LaFave has cited our discovery statute for precisely this proposition, observing that in Wisconsin "if the prosecution expects that the defendant will raise a certain contention that might call for rebuttal witnesses, it need not list those witnesses even if fairly certain as to who they will be." 4 Wayne R. LaFave, Criminal Procedure § 20.3(h) (2d ed. 1999) (citing Wis. Stat. § 971.23(1)(d)).

¶ 16.　Sound policy reasons support our holding that the State should not be barred from putting on legitimate rebuttal evidence simply because it correctly anticipated the defense. Any contrary rule would cause considerable delay and confusion in the trial process. First, it would require a prosecutor to assemble and list all possible rebuttal witnesses in anticipation of defense

733

strategies that may or may not be presented at trial. This would needlessly protract the entire trial process. Furthermore, if the prosecutor presented in the case-in-chief evidence that was directed to a defense theory which was never advanced during the trial, the jury would view the prosecutor's efforts, at best, as a waste of time and, at worst, as disingenuous, untrustworthy and, perhaps, "piling-on."

¶ 17.  Konkol asserts that to admit such evidence results in trial by ambush "where neither side of the lawsuit knows until the actual day of trial what the other side will reveal in the way of witnesses or facts." *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981). We disagree. Our discovery statute does not require a defendant to divulge the details of his or her own case.[5] Once a defendant presents a theory of defense, however, the credibility of that theory becomes an issue in the case. The defendant runs the risk that the State will rebut the defense theory with evidence of its own. This is certainly the approach Wisconsin applies to impeachment evidence; we see no reason not to apply the same approach to rebuttal evidence.[6] We therefore conclude

---

[5] While defendants are required to present a witness list upon demand, Wis. Stat. § 971.23(2m)(a), they are not required to provide notice of the theory of defense, except for notice of alibi pursuant to § 971.23(8).

[6] For example, in *Ranft v. Lyons*, 163 Wis. 2d 282, 303, 471 N.W.2d 254 (Ct. App. 1991), we held that an insurance company need not disclose surveillance videotape it may have taken of an injured plaintiff. The effect of the holding was to allow the insurance company to hold back impeachment evidence in order to catch the plaintiff in a lie on the witness stand. As this authoring judge commented in a later case, "Th[e] unannounced policy goal [in *Ranft*] is that showing jurors a video catching

that the trial court erred in barring the State from using its expert as a rebuttal witness on the basis of nondisclosure.

¶ 18. Thus, the only other basis for barring the witness would be that she was not a bona fide rebuttal witness. The trial court has considerable discretion in controlling evidence to be admitted in rebuttal. *King v. State*, 75 Wis. 2d 26, 42, 248 N.W.2d 458 (1977). We determine, however, that the trial court erred as a matter of law when it stated that the expert witness was "not really rebuttal" and "could have been proffered during the case in chief." Whether evidence could have been admitted in the State's case is not the test of admissibility of rebuttal evidence. The proper test under *Lunde* is whether the expert's testimony only became necessary and appropriate when Konkol presented his case-in-reply. *Lunde*, 85 Wis. 2d at 91–92; *see also King*, 75 Wis. 2d at 42 (rebuttal evidence should meet new facts put in by defendant).

¶ 19. We are convinced that the State satisfied that test in this case. The expert's testimony was proper rebuttal because it directly answered an issue introduced by Konkol's defense—that he could not have been intoxicated after only one drink. It should have come as

personal injury plaintiffs in a probable lie is a good thing—it serves the truth-finding function of litigation. The policy goal of showing the jury that the plaintiff has been caught lying is deemed more important than disclosing the video at pretrial and cost effectively settling the case or gaining dismissal of it." *Martz v. Trecker*, 193 Wis. 2d 588, 600–01, 535 N.W.2d 57 (Ct. App. 1995) (Brown, J., concurring). The same reasoning applies to withholding rebuttal evidence to challenge the credibility of the defense theory.

no surprise to Konkol that the State would seek to defuse his "only one drink" theory with evidence that a man of his size would have had to consume five drinks to blow 0.12%. This is not trial by ambush; it is simply the State's response to an issue Konkol raised in his defense. The fact that the expert's testimony would have been useful in the case-in-chief does not preclude its use in rebuttal. Because the trial court should have let the expert testify, it follows that the trial court's alternate procedure of allowing the State to use the blood alcohol chart was not error.[7]

*By the Court.*—Judgment affirmed.

[7] We originally entered an opinion in this case on May 1, 2002. Konkol moved for reconsideration of the decision on the basis that it was in conflict with the supreme court decision in *State v. DeLao*, 2002 WI 49, 252 Wis. 2d 289, 643 N.W.2d 480, which, released on May 7, 2002, affirmed a published court of appeals decision. We were well aware of the *DeLao* case when we entered our original opinion but did not reference it because we deemed it inapplicable to this case. Nevertheless, we granted Konkol's motion to reconsider, withdrew our opinion, and now reissue it with a discussion of why *DeLao* is distinguishable from the case before us.

In *DeLao*, the defendant was charged with obstructing an officer and harboring or aiding a felon. *Id.* at ¶ 5. The charges were connected with her conduct after a shooting in her home that involved her boyfriend and another man. *Id.* Initially, she denied involvement with the shooting but later, during a police interview, admitted to helping her boyfriend clean up the crime scene because she was afraid and he was "acting crazy." *Id.* at ¶ 4. Her theory of defense was based on coercion, that she aided her boyfriend and then lied to the police about it because she was afraid of him. *Id.* at ¶ 8.

After the State rested its case on the second day of trial, the prosecutor informed the court of statements that DeLao had made which contradicted her earlier statements about being afraid of her boyfriend. *Id.* at ¶ 9. Indicating that she would use the statements to impeach DeLao, the prosecutor explained that the lead investigator in the case learned of these statements before trial from a police detective who had interviewed DeLao. The prosecutor had not learned of the impeaching statements until that morning. *Id.*

The supreme court affirmed our decision that the State violated its discovery obligations under WIS. STAT. § 971.23(1)(b) when it failed to disclose DeLao's oral statements before her trial began. *DeLao*, 2002 WI 49 at ¶ 2. The case concerned only the scope of the prosecutor's duty to make herself aware of the accused's oral statements and the interpretation of "plans to use in the course of trial" under para. (b). *See id.* at ¶ 16. The court concluded that a reasonable prosecutor should have known of DeLao's statements before trial because the lead investigator had learned of them before trial. *Id.* at ¶ 47. In addition, the court concluded a reasonable prosecutor would have planned to use those statements to counter the defendant's theory of defense. *Id.* The failure to disclose the statements was prejudicial, justifying a new trial.

*DeLao* stands for the proposition that a prosecutor shall be charged with knowledge of an accused's oral statements when they are given in a police interview and communicated to a lead investigator. Failure to disclose such oral statements to the defendant violates WIS. STAT. § 971.23(1)(b). Notably, *DeLao* did not involve para. (d) and, in particular, its exception for rebuttal witnesses or those called for impeachment only. Our case does not involve any oral statements taken from Konkol by the State; rather, it involves the admissibility of an expert witness that the State anticipated using to rebut Konkol's theory of defense. The fact that Konkol was surprised by the witness at trial does not mean that the witness was not a legitimate rebuttal witness. *See DeLao*, 2002 WI 49 at ¶ 116 ("[t]he existence of this exception in paragraph (d) legitimizes the use of rebuttal witnesses who may surprise the defendant") (Prosser, J., dis-

senting). The decision in *DeLao* does not require disclosure of witnesses that the State anticipates using only in rebuttal under para. (d).

Finally, Konkol argues our decision today is unfair because "[h]e, unlike the State, has to anticipate the state's trial strategy and disclose possible witness[es] . . . . Because only the defendant has to anticipate and disclose witnesses, the defendant is severely disadvantaged at trial." We find no unfairness in the positions of the State and the defendant. The State essentially reveals its theory of the case when it files a complaint against the defendant. The defendant has no duty to disclose his or her theory of defense unless it involves an alibi. Therefore, we discern no unfairness in this process. In this case, the night Konkol was arrested he maintained that he had consumed only one rum and coke. The State reasonably assumed that this would form the basis of his defense at trial and the State assembled its case in preparation of meeting that defense. There is no law that required the State to inform Konkol that it was anticipating his defense theory before trial.