STATE of Wisconsin, Plaintiff-Respondent,

v.

Brent T. Novy, Defendant-Appellant.†

Court of Appeals

*Nos. 2011AP407–CR, 2011AP408–CR, 2011AP409–CR.*
*Submitted on briefs October 19, 2011.*
*—Decided December 21, 2011.*

2012 WI App 10

(Also reported in 809 N.W.2d 889.)

† Petition for Review Filed.

439

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph G. Easton* of *Easton Law Office*, Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine A. Remington*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Reilly, J., and Neal Nettesheim, Reserve Judge.

¶ 1. NEUBAUER, P.J.   Brent Novy appeals from judgments of conviction for two counts of stalking, six counts of bail jumping and one count of violating a harassment restraining order. Novy was convicted of the offenses stemming from his conduct toward his former fiancé, Julie N., following a jury trial. Novy raises three issues on appeal:   (1) the trial court erred in allowing the State to call rebuttal witnesses to testify that Novy's fingerprints were found on a pay phone after the fingerprint evidence had been excluded during the State's case-in-chief for failure to disclose, (2) the trial court erred in admitting other-acts evidence of him placing a video recorder in Julie's bedroom without her knowledge, and (3) he was deprived of his right to an impartial jury and a fair trial when his counsel observed

a juror sleeping during his closing argument. We reject Novy's challenges. We affirm the judgments.

## BACKGROUND

¶ 2.   On May 8, 2008, the State charged Novy with one count of stalking Julie based on conduct occurring between October 17, 2007, and February 4, 2008. As a condition of bail, Novy was ordered to have no contact with Julie and "not to be within 1000 feet of her residence." Subsequently, on November 12, 2008, Novy was charged with an additional count of stalking for conduct occurring between May 4, 2008 and November 10, 2008. He was also charged with eight counts of bail jumping for violating the conditions of release for the May 2008 stalking charge. As a condition of his release, Novy was again ordered to have no contact with Julie or her residence. On January 14, 2009, Novy was again charged with three counts of bail jumping and one count of violating a harassment injunction. The cases were consolidated and proceeded to trial on May 24, 2010. Novy was convicted on all counts, except four counts of bail jumping. Novy appeals. Additional facts relevant to the three issues on appeal will be set forth as necessary to our discussion.

## DISCUSSION

1.   *Fingerprint Evidence Excluded from the State's Case-in-Chief Due to a Discovery Violation was Properly Admitted on Rebuttal.*

   a.   *Relevant Facts and Proceedings*

¶ 3.   Count 7 of the eight bail jumping charges filed by the State in November 2008 was based on an allegation that, after having been charged with felony

stalking and having been released from custody, Novy violated his conditions of release by "telephoning Julie N[.] from the payphone at L&M Meats." As to this charge, the State represented in its opening statement:

> [Novy] continued to call Julie from pay phones in town. He called her from a pay phone at L and M Meats; and you will hear testimony from the police officer who got his fingerprints, his right thumb print off that pay phone and from the officer who performed the finger-prints matching to match that with [Novy's] finger-print.

At the close of opening statements, defense counsel moved for the exclusion of the fingerprint evidence under Wis. Stat. § 971.23 (2009–10)[1] because, despite a timely discovery demand, he had not received test results or comparisons of any fingerprint evidence. While the State had disclosed the name of the officer who conducted the fingerprint analysis, Officer Todd Thorne, and the defense had received a copy of his report, the State had not identified Thorne as an expert witness or attached a copy of the fingerprint evidence to the report. The trial court excluded the fingerprint evidence based on the State's failure to designate Thorne as an expert witness prior to trial, thereby depriving the defense of notice and the opportunity to consider whether to name its own expert.

¶ 4. During the State's case-in-chief, Julie testi-fied to a period of time, beginning in late October 2008, when she was receiving calls to her home from various pay phone locations. Relevant to the fingerprint issue, Julie testified that on November 9, 2008, she received a call from the pay phone at L&M Meats. Julie had

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

previously seen Novy near the pay phone at L&M Meats which is "[n]ot too far" from his residence. Julie found out the phone number was assigned to the pay phone at L&M Meats by calling her sister from that pay phone and having her sister write down the number from caller ID.

¶ 5. At the close of the State's evidence, Novy moved to dismiss the bail jumping count based on a lack of evidence linking him to the pay phone call from L&M Meats. The State conceded that absent the fingerprint evidence there was not any identifying evidence linking Novy to that call. The court dismissed the charge, Count 7, based on the State's concession. When the State asked whether the fingerprint evidence would be available on rebuttal, the trial court responded that it did not know.

¶ 6. Novy chose to testify in his own defense. The last question posed by the State on cross-examination was: "[D]id you call Julie from L and M Meats here in Kenosha on November 9th of 2008 at approximately 8:00 p.m.?" Novy responded, "No, I did not." When asked whether it anticipated calling rebuttal witnesses, the State indicated: "[G]iven [Novy's] denial of making the phone call at L and M Meats, I think at this time the fingerprint evidence is proper for rebuttal." Novy's counsel objected, arguing that the fingerprint evidence would not rebut Novy's testimony because the State had inquired only as to whether Novy had called Julie from the pay phone and not whether he had ever used the pay phone. Novy's counsel additionally argued that the use of previously requested and undisclosed physical evidence was not akin to a "rebuttal witness."

¶ 7. The court ruled that the fingerprint evidence was "bona fide rebuttal evidence" and that a distinction between witness testimony and physical evidence no

longer exists because, under Wisconsin law, a rebuttal witness is permitted to use physical evidence in connection with his or her testimony. The State then presented evidence from Officer Willie Hamilton who took the fingerprints from the pay phone and Officer Adrian Primmer who verified that the fingerprints belonged to Novy.[2] Novy testified in surrebuttal that he indeed used the phone, but that he called a friend in the Philippines. Novy challenges the admission of the fingerprint evidence.

    b.   *WISCONSIN STAT. § 971.23(1)(d) & (e) Do Not Require Disclosure of Rebuttal Witnesses and Their Written or Recorded Statements, Including Expert Reports and Scientific Tests.*

¶ 8.   The State does not challenge the trial court's exclusion of the fingerprint evidence from its case-in-chief. *See State v. Guzman,* 2001 WI App 54, ¶ 19, 241 Wis. 2d 310, 624 N.W.2d 717 (a trial court's decision whether to exclude evidence for failure to comply with discovery requirements under WIS. STAT. § 971.23 is committed to the trial court's discretion). Rather, the issue is whether fingerprint evidence excluded from the case-in-chief due to a discovery sanction under § 971.23(7m) may later be used to challenge the defendant's testimony in rebuttal. We turn first to the relevant statute.

¶ 9.   WISCONSIN STAT. § 971.23 governs the discovery and inspection of evidence in a criminal action. It provides in relevant part:

---

[2] While Primmer was not named as a witness prior to trial, she was testifying in place of Thorne, who was unavailable at the time of trial.

446

**(1)** WHAT A DISTRICT ATTORNEY MUST DISCLOSE TO A DEFENDANT. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:

. . . .

(d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. *This paragraph does not apply to rebuttal witnesses or those called for impeachment only.*

(e) *Any relevant written or recorded statements of a witness named on a list under par. (d)* including . . . any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony, and the results of any physical or mental examination, scientific test, experiment or comparison that the district attorney intends to offer in evidence at trial.

. . . .

**(7m)** SANCTIONS FOR FAILURE TO COMPLY. (a) The court shall exclude any witness not listed or evidence not presented for inspection or copying *required by this section,* unless good cause is shown for failure to comply. The court may in appropriate cases grant the opposing party a recess or a continuance.

*Id.* (Emphases added.) Here, the trial court excluded the fingerprint witness testimony and evidence the State intended to use in its case-in-chief as a sanction under § 971.23(7m) for the State's failure to comply with § 971.23(1)(d) and (e). In rebuttal, however, the court ruled that same evidence was admissible because

447

under § 971.23(1)(d) and (e) the duty to disclose "does not apply to rebuttal witnesses or those called for impeachment only" (and § 971.23(7m) provides for sanctions only for those witnesses and accompanying statements for whom disclosure was "required by this section").

¶ 10.   Novy contends that evidence ruled inadmissible in the State's case-in-chief due to a discovery violation, "should [be] excluded at all stages of the trial, including rebuttal." The circuit court found that *State v. Konkol*, 2002 WI App 174, 256 Wis. 2d 725, 649 N.W.2d 300, provides guidance, as do we. In *Konkol*, this court addressed whether the State was required to disclose a known and anticipated rebuttal witness regardless of the statement in WIS. STAT. § 971.23(1)(d) that the duty to disclose expert witnesses does not apply to rebuttal witnesses or those called for impeachment only. *Konkol*, 256 Wis. 2d 725, ¶ 1. The *Konkol* court concluded that the State was not required to do so. *Id.*, ¶ 10. In reaching its conclusion, the court noted the "well-established rule in Wisconsin . . . that the State has no duty to provide the names of bona fide rebuttal witnesses regardless of any demand by the defendant." *Id.*, ¶ 11 (citing *Lunde v. State*, 85 Wis. 2d 80, 91, 270 N.W.2d 180 (1978)). This is so even when the State knows of the defense strategy and anticipates using a witness at trial; "the focus of the disclosure inquiry is not on whether the State correctly anticipated the defense strategy beforehand, but on whether the proffered testimony is bona fide rebuttal evidence." *Konkol*, 256 Wis. 2d 725, ¶ 15. The test for the admissibility of rebuttal evidence is not whether it could have been admitted in the State's case but rather whether the rebuttal testimony only became necessary and appro-

priate when the defendant presented his case-in-reply. *Id.*, ¶ 18 (citing *Lunde*, 85 Wis. 2d at 91–92).

¶ 11.   Pointing to *Konkol*, Novy asks us to draw a bright-line distinction between rebuttal evidence that the State intended for use in rebuttal only and evidence the State offers in rebuttal after having been excluded for use in the State's case-in-chief under WIS. STAT. § 971.23(7m) for failure to disclose. We decline to do so. Not only has Novy failed to identify any controlling law in support of his contention (and we have not uncovered any) but we see no basis for such a distinction.

¶ 12.   This court's conclusion in *Konkol* was not premised on the fact that the State only intended to use the known and anticipated evidence in rebuttal. Rather, the court observed that "[s]ound policy reasons" support the admission of legitimate rebuttal evidence regardless of whether it was known or anticipated by the State prior to trial. *See Konkol*, 256 Wis. 2d 725, ¶ 16. In rejecting the defendant's concerns regarding "trial by ambush," the court reasoned that once a defendant presents a theory of defense, "the credibility of that theory becomes an issue in the case." *Id.*, ¶ 17. "The defendant runs the risk that the State will rebut the defense theory with evidence of its own." *Id.* To the extent that the rebuttal evidence undercuts the defendant's credibility, it "serves the truth-finding function" of the adversary process. *Id.*, ¶ 17 n.6 (citation omitted).

¶ 13.   *Konkol* thus affirms that, under WIS. STAT. § 971.23(1)(d), bona fide rebuttal evidence is admissible despite the absence of any disclosure by the State. Likewise, disclosure of reports accompanying rebuttal

testimony is not required under § 971.23(1)(e).[3] A sanction under § 971.23(7m) is applicable to only those witnesses and evidence required to be disclosed. Once Novy took the stand and denied calling Julie from the pay phone at L&M Meats, the rebuttal evidence was no less necessary because it was initially intended for the State's case-in-chief than if it were admissible or more appropriate for the case-in-chief. One does not necessarily preclude the other; admission lies within the sound discretion of the court. *State v. Watson*, 46 Wis. 2d 492, 499, 175 N.W.2d 244 (1970) (whether evidence which could, or should, have been admitted as part of the prosecution's case-in-chief may be received in rebuttal lies within the discretion of the court).

¶ 14.   In concluding that the initial exclusion does not necessarily preclude later admission, we also find guidance in the Wisconsin Supreme Court's holding in *Wold v. State*, 57 Wis. 2d 344, 352–53, 356, 204 N.W.2d 482 (1973), permitting the admission of impeachment evidence initially excluded for violations of *Miranda v. Arizona*, 384 U.S. 436 (1966).[4] The *Wold* court recognized the Supreme Court's holding in *Harris v. New*

---

[3] *See State v. Watson*, 46 Wis. 2d 492, 495–96, 175 N.W.2d 244 (1970) (rebuttal testimony that witness suffered two gunshot wounds and medical records evidence supporting her testimony were admitted to contradict defendant's statement that he had only five rounds in his gun and only heard two shots fired); *State v. Moriarty*, 107 Wis. 2d 622, 627, 321 N.W.2d 324 (Ct. App. 1982) (previously undisclosed medical records indicating statement of victim's treating physician admissible on rebuttal where victim's injuries only became an issue during defense portion of the trial).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966), bars the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. *See Harris v. New York*, 401 U.S. 222, 224 (1971).

*York*, 401 U.S. 222, 224 (1971), that a statement inadmissible in the prosecution's case-in-chief because of lack of the procedural safeguards required by *Miranda* may, if trustworthiness satisfies legal standards, be used for impeachment purposes to attack the credibility of the defendant's trial testimony. *Wold*, 57 Wis. 2d at 355–56; *see also Walder v. United States*, 347 U.S. 62 (1954) (physical evidence, inadmissible in the case-in-chief, may be used for impeachment purposes). The United States Supreme Court reasoned in *Harris* that, having voluntarily taken the stand, the defendant was under an obligation to speak truthfully, and the prosecution "did no more than utilize the traditional truth-testing devices of the adversary process." *Harris*, 401 U.S. at 225. Neither the government's illegal methods of obtaining evidence, nor a defendant's privilege to testify in his or her own right, would provide the defendant with "a shield against contradiction of his [or her] untruths." *Id.* at 224. Thus, evidence excluded on direct may be used for impeachment if the defendant takes the stand and "testifies to matters directly contrary to what is in the excluded statement." *Wold*, 57 Wis. 2d at 356. The test for excluding testimony for impeachment purposes when the defendant takes the stand is untrustworthiness, not necessarily its exclusion in chief. *Id.* at 355.

¶ 15. Here, the expert witness and fingerprint evidence were excluded by the trial court due to a statutory discovery violation. As in *Wold*, the exclusion of the evidence from the State's case-in-chief was not due to its untrustworthiness or unreliability. At trial, Novy did not challenge the accuracy of the fingerprint evidence or object that the State's introduction of the evidence in rebuttal deprived him of the opportunity to retain his own expert. Indeed, he testified that he did use the phone—effectively admitting that the finger-

451

print testimony and evidence was accurate. And, Novy had an opportunity to reply on surrebuttal.

¶ 16. Novy's complaint is that his testimony was impeached—that he was made to appear untruthful or less credible. However, the discovery statute provides notice that undisclosed rebuttal witnesses may be used.[5] And here, the witness and fingerprint evidence were identified during opening statements and discussed during the subsequent motion to exclude. Further, Novy cannot claim reliance on the initial exclusion of this evidence; the trial court expressly left open the question of whether the fingerprint evidence would be used in rebuttal. Consistent with the reasoning of *Konkol*, *Wold* and *Harris*, having voluntarily taken the stand, Novy was under an obligation to speak truthfully, and the prosecution "did no more than utilize the traditional truth-testing devices of the adversary process." *Harris*, 401 U.S. at 225. We see no error in the trial court's implicit conclusion that there was no apparent justification for permitting the defendant to affirmatively resort to unimpeachable testimony in reliance on the State's inability to challenge his credibility.[6] *Id.* at 226. We therefore turn to whether the

---

[5] We reject Novy's attempt to liken the discovery violation in this case to that addressed by the court in *State v. DeLao*, 2002 WI 49, 252 Wis. 2d 289, 643 N.W.2d 480. The discovery violation in *DeLao* involved an oral statement taken from the defendant but undisclosed prior to trial. *Id.*, ¶ 9. *DeLao* did not involve WIS. STAT. § 971.23(1)(d) and, in particular, its exception for rebuttal witnesses or those called for impeachment only. Our case does not involve any oral statements taken from Novy by the State; rather, it involves an expert fingerprint witness and a report.

[6] Notably, the cases defining a bona fide rebuttal witness have not focused on the manner in which a rebuttal witness'

452

witness testimony and fingerprint evidence in this case was bona fide rebuttal evidence.

   c. *The Trial Court Did Not Err in Determining that the Evidence was Bona Fide Rebuttal Evidence.*

■■

¶ 17.   Here, Novy's defense was that he did not commit the acts alleged by Julie and the other State witnesses. To that end, Novy testified on his own behalf and refuted the State's evidence regarding each count charged. When asked by the State if he had called Julie from the pay phone at L&M Meats, Novy denied doing so. It is this denial that rendered the use of the fingerprint testimony and evidence necessary and appropriate on rebuttal. In so concluding, we acknowledge Novy's contention that the fingerprint evidence does not rebut his testimony because he denied only calling Julie from the pay phone, not having ever used it. Novy takes too narrow a view. Case law instructs that on

testimony or evidence became necessary, i.e., whether it was the result of questioning by the State or the defense. For example in *Lunde v. State*, 85 Wis. 2d 80, 91–92, 270 N.W.2d 180 (1978), the court reasoned that the rebuttal witness' "testimony was only necessary and appropriate when defendant took the stand and denied that he knew James Anderson and attempted to create a doubt in respect to his whereabouts on May 9, 1975." Likewise, in *Wold v. State*, 57 Wis. 2d 344, 353, 204 N.W.2d 482 (1973), it was the State that, on cross-examination, questioned the defendant regarding the excluded statements, and it was the defendant's denial as to making them that rendered them admissible for impeachment purposes. Thus, so long as the defendant's testimony makes the rebuttal witness' testimony necessary and appropriate, we think it makes no difference as to whether the defendant's testimony was elicited by the State or the defense.

rebuttal, "[i]t is proper to admit evidence of any acts or circumstances which are inconsistent with the relevant testimony of the witness. Any evidence, otherwise proper, which *in any respect* tends to contradict the witness, is admissible for this purpose." *Watson*, 46 Wis. 2d at 500 (emphasis added; citation omitted). We reject Novy's contention that the fingerprint evidence did not rebut Novy's testimony that he did not call Julie from the pay phone at L&M Meats.

¶ 18. "[T]he trial court has considerable discretion in controlling the evidence to be admitted in rebuttal." *Id.* "The term 'discretion' contemplates a process of reasoning which depends on facts that are in the record or reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards." *Mullen v. Coolong*, 153 Wis. 2d 401, 406, 451 N.W.2d 412 (1990). Here, we conclude that the trial court properly exercised its discretion when it admitted the legitimate rebuttal testimony and evidence. As noted above, Novy did not challenge the accuracy of the fingerprint evidence, nor did he object that the State's introduction of the fingerprint evidence in rebuttal deprived him of the opportunity to retain his own expert.[7] Rather, Novy's complaint is that he was caught by surprise and impeached. However, the trial court is in the best position to assess whether the admission of the rebuttal evidence would

---

[7] Had Novy challenged the accuracy of the evidence or sought a recess to consult an expert or call other witnesses to challenge the fingerprint evidence, these issues certainly could be considered in the trial court's broad exercise of discretion. *See Watson*, 46 Wis. 2d 500 ("The determination of what is admissible on rebuttal is primarily for the discretion of the trial court." (Citation omitted)).

result in unfair surprise[8] or an inability to respond. Here, the court noted that any shortcomings in the evidence—and specifically that the evidence does not necessarily establish that Novy called Julie—could be argued by the defense in terms of the weight to be afforded it. We see no error in the court's determination.[9]

2. *The Trial Court Properly Exercised Its Discretion in Admitting Other-Acts Evidence.*

¶ 19. Novy next contends that the trial court erred in admitting other-acts evidence. The other-acts evidence involved Novy setting up a hidden camera in Julie's bedroom in October 2006, approximately one year prior to the first alleged stalking incident in October 2007. The State sought to introduce the evidence as context for the crimes charged as well as evidence of motive, intent, and common scheme or plan in the charged offenses. Novy objected to the admission of the evidence. The State asserts, and Novy does not dispute, that the trial court held a hearing on the other-acts motion on February 25, 2010, at which it granted the State's motion.

---

[8] As noted in *State v. Konkol,* 2002 WI App 174, ¶ 12 n.4, 256 Wis. 2d 725, 649 N.W.2d 300, our supreme court suggested in *Caccitolo v. State,* 69 Wis. 2d 102, 118, 230 N.W.2d 139 (1975), that it would be inappropriate to reserve a witness who would normally be used in the State's case-in-chief for rebuttal and that the use of such a witness for dramatic effect might make inapplicable the rule exempting disclosure of rebuttal witnesses.

[9] We note that Novy did not raise an other-acts objection to the admissibility of the fingerprint evidence before the trial court, nor does he raise the issue on appeal.

¶ 20.   A trial court's decision to admit other-acts evidence is a discretionary one, and we affirm if the trial court reviewed the relevant facts, applied a proper standard of law, and using a rational process, reached a reasonable conclusion. *State v. Davidson*, 2000 WI 91, ¶ 53, 236 Wis. 2d 537, 613 N.W.2d 606. Here, Novy has failed to provide this court with a transcript of the February 25, 2010 hearing and we have no record of the trial court's reasoning. We therefore assume the record supports the trial court's ruling. *See State v. McAttee*, 2001 WI App 262, ¶ 5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.' " (Citation omitted)). We uphold the trial court's other-acts ruling.

3.   *The Trial Court Properly Exercised Its Discretion in Denying Defendant's Challenge Based on the Right to an Impartial Jury.*

¶ 21.   Novy contends that he was deprived of his right to an impartial jury because a juror fell asleep during defense counsel's closing argument. Novy raised the issue in an off-the-record discussion following closing arguments and moved to have the juror removed. Novy argued that he observed the juror's eyes closed on several occasions and his head nod on one occasion. The State indicated that while the juror was "not paying rapt attention," the juror was not asleep during the evidence portion of the trial. In reaching its determina-

tion that the juror could remain on the jury and deliberate, the trial court noted that it had not observed the juror sleeping and that the juror had paid attention during the evidence portions of the trial. Novy challenges the trial court's ruling.

¶ 22.   Article I, § 7 of the Wisconsin Constitution guarantees an impartial jury, and the Sixth and Fourteenth Amendments to the United States Constitution guarantee an impartial jury and due process. *State v. Hampton*, 201 Wis. 2d 662, 668, 549 N.W.2d 756 (Ct. App. 1996). Implied in the concept of assuring an impartial jury is the presence of jurors who have heard all of the material testimony. *Id.* How to proceed when faced with an assertion of jury inattentiveness is left to the trial court's discretion. *Id.* at 670. An appellate court will affirm a discretionary decision if the trial court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *State v. Kleser*, 2010 WI 88, ¶ 37, 328 Wis. 2d 42, 786 N.W.2d 144.

¶ 23.   At the outset, we note that the parties and the trial court disagreed as to whether the juror did, in fact, fall asleep during defense counsel's closing argument. In considering Novy's motion to remove the juror, the trial court noted that it had paid "very close attention to the demeanor and conduct of the jurors." The court did not notice the juror sleeping during closing argument and did not "notice any of those kinds of problems while testimony was coming in." The trial court then correctly observed that removal may be required if a juror is asleep during testimony or during the presentation of evidence. *See Hampton*, 201 Wis. 2d

at 673 (if there is sufficient demonstration of juror sleepiness, the trial court must inquire as to the importance of the testimony missed). However, closing arguments are not evidence. *See* WIS JI—CRIMINAL 160 ("Consider carefully the closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence.") We know of no Wisconsin case, and Novy has not cited one, in which a juror was removed for nodding off during closing arguments. We therefore reject Novy's argument that the trial court erred in failing to conduct a further inquiry into whether the juror was sleeping. We also note that Novy never requested the court to conduct further inquiry. This court does not fault the trial court for failing to undertake a discretionary measure when the defendant did not ask the court to do so. *See State v. Gollon*, 115 Wis. 2d 592, 604–05, 340 N.W.2d 912 (Ct. App. 1983). We uphold the trial court's discretionary determination denying Novy's request to remove a juror.

## CONCLUSION

¶ 24. We conclude that the fingerprint evidence excluded from the State's case-in-chief due to a discovery violation was properly admitted on rebuttal. We further conclude that the trial court properly exercised its discretion when it admitted other-acts evidence and denied Novy's request to remove a juror who allegedly fell asleep during the defense's closing arguments. We affirm the judgments.

*By the Court.*—Judgments affirmed.

¶ 25. REILLY, J. (*dissenting*). The State charged Novy with bail jumping, alleging that on November 9, 2008, he violated his bail conditions by telephoning

Julie from a payphone at L&M Meats. The State conceded that they failed to disclose, as required, both the name of the fingerprint expert that was going to be called at trial as well as the fingerprint report. The State also conceded that absent the fingerprint evidence they could not link Novy to the phone call. The State does not contest the trial court's dismissal of the bail jumping charge.

¶ 26. With the dismissal of the November 9, 2008 bail jumping charge, the evidence of the phone call at L&M Meats was no longer legally or logically relevant to any of the crimes considered by the jury. The majority concludes, however, that once Novy took the stand to testify in his own defense that he opened himself up to being impeached as to the phone call from L&M Meats. The majority concludes that evidence of the phone call became "bona fide rebuttal evidence" simply because Novy testified in his own defense. If Novy had been defending himself against a charge of making a phone call from L&M Meats on November 9, 2008, I would agree with the majority—but he wasn't—the evidence of the phone call from November 9, 2008, as received by the trial court, was irrelevant to any of the charges Novy was being tried on.

¶ 27. If the evidence of the November 9, 2008 phone call at L&M Meats had been proffered to the trial court as "other-acts" evidence per Wis. Stat. § 904.04(2), it may have been allowed in. The State, however, did not seek permission to offer the evidence as "other-acts" evidence and the trial court did not analyze the evidence under the *Sullivan* analysis.[1] The majority in its analysis of the admissibility of the rebuttal evidence focuses on the trial court's exclusion of the fingerprint

---

[1] *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

evidence and assumes the rebuttal evidence was admissible absent the State's failure to comply with the discovery statute. The majority fails to recognize that the dismissal of the bail jumping charge made the fingerprint evidence irrelevant.

¶ 28. Novy had the absolute right to testify in his own defense against the charges that he faced. We do not try people for having a bad character—we try them for the specific crime for which they are charged. If Novy had to defend himself against acts he did in his life that were not evidence of the crimes he was being tried on, he had the right to receive notice that he would have to so answer for those bad acts. It was fundamentally unfair to allow the State in rebuttal to connect up its opening statement that it would produce such "evidence" when the crime had been dismissed mid-trial and the State had not sought permission to use the "other-acts" evidence prior to impeaching Novy.[2]

¶ 29. The majority's conclusion has the result of rewarding the State for committing two evidentiary wrongs:   the State's failure to comply with the discovery statute and the State's offering "other-acts" evidence without first obtaining permission to do so. The majority's reliance on *Konkol, Wold* and *Harris* are all misplaced as those cases relate to the admission of relevant rebuttal evidence—evidence that was related to the crimes being tried. The rebuttal expert used against Novy, in contrast, was not a "bona fide rebuttal witness" as he was not offering any evidence related to a crime the jury was considering, nor was the evidence permitted "other-acts" evidence.

---

[2] Novy was in a catch 22—he had to answer to expert reports and fingerprint testimony for a crime that had been dismissed by the trial court because the State had failed to provide that evidence to him.

¶ 30. The evidence of the phone call at L&M Meats on November 9, 2008, was not "legitimate rebuttal testimony and evidence" given the State's violation of WIS. STAT. § 971.23 and its failure to obtain permission to offer the phone call as "other-acts" evidence. I would respectfully reverse and remand for a new trial.