# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP407-CR, 2011AP408-CR & 2011AP409-CR |
| COMPLETE TITLE: | |

State of Wisconsin,
      Plaintiff-Respondent,
  v.
Brent T. Novy,
      Defendant-Appellant-Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 338 Wis. 2d 439, 809 N.W.2d 889
(Ct. App. 2012 - Published)
PDC No: 2012 WI App 10

| | |
|---|---|
| OPINION FILED: | March 14, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 9, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Kenosha |
| JUDGE: | Barbara A. Kluka |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | Abrahamson, C.J., Bradley, J., concur (Opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | Prosser, J., did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Gerald P. Boyle* and *Boyle, Boyle & Boyle, S.C.,* Milwaukee, and oral argument by *Gerald P. Boyle*.

For the plaintiff-respondent, the cause was argued by *Christine A. Remington*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP407-CR & 2011AP408-CR & 2011AP409-CR
(L.C. No. 2008CF500, 2008CF1307 & 2009CF58)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Brent T. Novy,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**MAR 14, 2013**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. This is a review of a decision of the court of appeals[1] that affirmed a judgment of the circuit court for Kenosha County.[2] Novy raises two issues. First, Novy claims that the trial court erred when it allowed the State to use certain fingerprint evidence and related testimony in rebuttal, which the court had previously excluded from the State's case-in-chief due to a Wis. Stat. § 971.23

---

[1] <u>State v. Novy</u>, 2012 WI App 10, 338 Wis. 2d 439, 809 N.W.2d 889.

[2] The Honorable Barbara A. Kluka presided.

(2009-10) discovery violation.[3] Second, Novy asserts that he was deprived of his right to a fair trial by an impartial jury because, he claims, one of the jurors was sleeping during a portion of defense counsel's closing argument.

¶2 We conclude that, with regard to the admission of fingerprint-related testimony on rebuttal, the circuit court did not erroneously exercise its discretion. The circuit court initially determined that the State had failed to comply with its discovery obligations under Wis. Stat. § 971.23(1); and therefore, the court excluded fingerprint evidence and related testimony from the State's case-in-chief pursuant to § 971.23(7m)(a). However, after Novy testified such that the excluded fingerprint evidence and related testimony would controvert his testimony, the circuit court concluded that it could be presented in rebuttal. The circuit court properly interpreted § 971.23 under the facts of this case, and given the significant discretion afforded circuit courts on evidentiary matters, we cannot say that the circuit court erroneously exercised its discretion in permitting the rebuttal use of the fingerprint evidence and related testimony.

¶3 With regard to the circuit court's treatment of the allegedly sleeping juror, the circuit court did not find that the juror was sleeping; therefore, Novy failed to establish a

---

[3] Although the charged events occurred between 2007 and 2009, the relevant statutory provisions are identical to the current version of the statutes, and therefore, all subsequent references to the Wisconsin Statutes are to the 2009—10 edition unless otherwise indicated.

finding necessary to his contention. The circuit court's findings are not clearly erroneous, and therefore, we will not overturn the circuit court's refusal to strike the juror. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND[4]

¶4 For conduct that occurred between May 2008 and January 2009, Novy was charged in Kenosha County with two counts of stalking, 11 counts of felony bail jumping, and one count of violating a harassment injunction. All of the charges related to Novy's conduct toward his ex-fiancé, Julie N. The two had dated on and off for approximately five years, until September of 2007, when Julie ended the relationship. After the relationship ended, Novy continued to contact Julie, to the point where, in November 2007, Julie sought and obtained a harassment injunction against Novy under Wis. Stat. § 813.125(4). The injunction prohibited Novy from contacting Julie in any way, and required that he avoid her residence.

¶5 In early May 2008, Novy was charged with one count of stalking, in violation of Wis. Stat. § 940.32(2)(a), (b), and (c). The complaint (case no. 08-CF-500) alleged that, between October 17, 2007, and February 4, 2008, Novy had engaged in a

---

[4] Novy's trial involved 14 separate charges, but only two of those charges are relevant to this appeal: one count of bail jumping and one stalking charge. Therefore, we will briefly summarize the facts leading up to and including the trial, focusing on the two relevant charges, as well as the facts related to Novy's allegation that a juror was sleeping during defense counsel's closing argument.

course of conduct, directed at Julie, which had caused Julie to suffer serious emotional distress, and that Novy knew or should have known that his conduct would cause such distress. Generally, Novy's alleged conduct included following and harassing Julie in public places, calling Julie at work and hanging up, accessing Julie's voicemail and prowling around Julie's house.   Novy was released on a $1,000 signature bond, which provided that he was to have "No [c]ontact w/ Julie [N.]; not to be within 1000 feet of her residence."

¶6    Then, on November 12, 2008, Novy was charged with another count of stalking under Wis. Stat. § 940.32(2) and eight counts of felony bail jumping, in violation of Wis. Stat. § 946.49(1)(b).    These charges (case no. 08-CF-1307) all involved a course of conduct in which Novy allegedly had engaged between May 4, 2008, and November 10, 2008.   Similar to the conduct underlying the previous stalking charge, the alleged conduct involved hang-up calls to Julie's home, following her in public (including waiting for her outside her place of work), lurking around Julie's house and in her neighborhood, and repeatedly calling Julie's friends.   Again, Novy was released on bond, this time a $5,000 cash bond, which also provided that he was to have no contact with Julie or her residence.

¶7    Relevant for purposes of this appeal, one of the eight counts of bail jumping in case number 08-CF-1307 (Count 7) alleged that, on the night of November 9, 2008, Julie received a hang-up call from a payphone at L&M Meats in Kenosha, which was close to Novy's residence.   Julie had previously noticed Novy's

vehicle near L&M Meats, and had called her sister from that payphone to determine the phone number associated with that phone.   After receiving the hang-up call on the night of November 9, Julie called the police, who went to the payphone at L&M Meats and verified that was the number from which Julie had recently received the phone call.   Officers also lifted fingerprints from the receiver of the payphone.   Police analysts later determined that these fingerprints matched Novy's fingerprints.

¶8   On January 14, 2009, Novy was charged with three additional bail jumping counts, as well as one count of violating the harassment injunction, contrary to Wis. Stat. § 813.125(7).   The complaint (case no. 09-CF-58) alleged that Novy had been seen driving slowly past Julie's house, in violation of the harassment injunction and the conditions of his bonds for the prior charges.   Novy was again released on a cash bond ($20,000), which reiterated the prohibition on contacting Julie or being within 1,000 feet of her residence.

¶9   In late May 2010, a jury trial was held in Kenosha County, wherein the three separate cases were joined and Novy was tried on all 14 counts.   During opening statements, counsel for the State referred to testimony about fingerprint evidence that would tend to show that Novy had called Julie from L&M Meats on November 9, 2008.   After opening statements, defense counsel moved to exclude the fingerprint evidence and related testimony on the ground that the defense had requested all evidence subject to disclosure under Wis. Stat. § 971.23(1), but

the State failed to provide access to the cards on which the fingerprints were exhibited.[5]

¶10  The circuit court concluded that the State had failed in its obligation to properly disclose the fingerprint evidence, as required by Wis. Stat. § 971.23(1)(g).  Therefore, the court granted the defendant's motion to exclude the evidence.  When counsel for the State asked whether the fingerprint evidence would be available for rebuttal, Judge Kluka responded, "I don't know."

¶11  After the State completed its case-in-chief, the defense moved to dismiss Count 7 in case number 08-CF-1307, the bail jumping charge relating to the alleged phone call from the L&M Meats payphone, arguing that without fingerprint-related testimony, the State no longer had any evidence linking Novy to the phone on the night in question.  The State conceded that, without the fingerprint-related testimony, the State would be unable to prove the elements of bail jumping for Count 7.  Accordingly, the circuit court granted the defendant's motion to dismiss that count.

¶12  During the defense case, Novy chose to testify.  Prior to his testimony, defense counsel sought to prevent any questions regarding the phone call from L&M Meats on November 9, 2008, on the ground that the alleged call related solely to the

---

[5] Although the State had provided defense counsel with an expert's report relating to the fingerprint evidence, the actual fingerprint cards were not available when defense counsel went to review the materials at the evidence bureau.

dismissed bail jumping charge.  The State responded that the phone call from L&M Meats was a proper subject for questioning because the call related to the course of conduct supporting the second count of stalking, which allegedly occurred between May 4, 2008, and November 10, 2008 (case no. 08-CF-1307).  The circuit court agreed with the State and concluded that such questioning was relevant to the second stalking count.

¶13 During cross-examination of Novy, counsel for the State asked Novy, "[D]id you call Julie from L and M Meats here in Kenosha on November 9th of 2008 at approximately 8:00 p.m.?"  Novy responded, "No, I did not."  During Novy's redirect, defense counsel did not ask Novy any clarifying questions regarding his use of the payphone at L&M Meats on the night in question.

¶14 As the State prepared to present its case-in-rebuttal, counsel for the State asked whether the fingerprint evidence from L&M Meats and related testimony would be allowed at that point, given Novy's denial of having called Julie from that phone.  Defense counsel protested, arguing that the fingerprint-related testimony showed only that Novy had at some point used the payphone at L&M Meats, not that he had necessarily used it that night.  Additionally, defense counsel argued that the discovery statute, Wis. Stat. § 971.23(1) and (7m), mandated that evidence that had been excluded for discovery violations be excluded throughout the trial, not solely for the State's case-in-chief.  The circuit court, however, disagreed and allowed the State to present the fingerprint evidence and related testimony,

calling it "bona fide rebuttal evidence" as to the second stalking charge.

¶15 In its case-in-rebuttal, the State presented the testimony of two officers from the Kenosha Police Department, Officers Hamilton and Primmer. Officer Hamilton testified that he was an evidence technician; that he had been dispatched to examine the payphone at L&M Meats on the night of November 9, 2008; and that he had recovered two fingerprints from that phone. Additionally, Officer Primmer testified that he had conducted an analysis of the fingerprints that had been lifted from the payphone at L&M Meats, and that he had determined that those prints matched the fingerprints that the department had on file for Novy.

¶16 Defense counsel did not cross-examine Officer Primmer. On surrebuttal, however, defense counsel re-called Novy. Novy testified that, although he had previously denied calling Julie from the payphone at L&M Meats, he had used that phone "quite a few times" in the past. In particular, Novy stated that he had used the phone to call a friend in the Philippines because his cell phone did not have an international calling plan.

¶17 After closing arguments and immediately before the selection of the alternate juror, defense counsel sought a sidebar. The record reflects that defense counsel alleged that one of the jurors had been sleeping during the defense's closing argument, and that the juror therefore should be struck. The circuit court denied the motion, and noted that she makes an

effort "to keep track of what's going on with the jurors," and that she had not seen the juror sleeping.

¶18  The jury found Novy guilty of both counts of stalking, six counts of bail jumping, and the one count of violating the harassment injunction.  Novy was sentenced to 90 days in jail for violating the injunction, and two years of imprisonment for the second stalking offense, consisting of one year of confinement and one year of extended supervision.  For the remainder of the charges, Novy was placed on probation for five years, with the sentences withheld.

¶19  On appeal to the court of appeals, Novy raised the two issues currently before this court, seeking vacation of his sentence and a remand for a new trial.[6]  The court of appeals affirmed the circuit court's decision regarding the rebuttal evidence and the allegedly sleeping juror, concluding that both matters were within the broad discretion of the circuit court, and that there was nothing in the record to suggest that the court had erroneously exercised its discretion.  See State v. Novy, 2012 WI App 10, ¶¶18, 23, 338 Wis. 2d 439, 809 N.W.2d 889.

¶20 Novy petitioned for review, and we granted his petition.

---

[6] In the court of appeals, Novy also raised another issue relating to "other acts" evidence that he has not raised before this court.

## II.   DISCUSSION

### A.   Standard of Review

¶21   Novy raises two issues for review.  The first issue——whether the circuit court erred by allowing the State to present evidence in rebuttal when that evidence previously had been excluded as a sanction for a discovery violation——relates to the circuit court's decision on an evidentiary matter. Consideration of this issue begins with statutory interpretation and application, which present questions of law for our independent review, although we benefit from the previous interpretations of the court of appeals and the circuit court. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581.   In addition, whether to admit or deny evidence rests in the sound discretion of the circuit court, which we will not overturn absent an erroneous exercise of discretion.  See State v. Smith, 2005 WI 104, ¶28, 283 Wis. 2d 57, 699 N.W.2d 508.

¶22   Second, Novy argues that the circuit court erred by failing to strike a juror whom defense counsel alleged was sleeping during the defense's closing argument. The circuit court did not find that the juror was sleeping.  We will uphold a circuit court's findings of fact unless they are clearly erroneous.  See State v. Funk, 2011 WI 62, ¶¶29–30, 335 Wis. 2d 369, 799 N.W.2d 421.

### B.   Rebuttal Evidence

¶23  Novy argues that the circuit court erred when it allowed the State to rebut Novy's testimony using fingerprint

evidence and related testimony that the court had previously excluded for a discovery violation under Wis. Stat. § § 971.23(1) and (7m)(a).  The State contends that its use of the fingerprint-related evidence is clearly permitted under § 971.23(1)(d).   We therefore begin our discussion with the relevant portions of the discovery statute, § 971.23, which provide in relevant part:

> (1) What a district attorney must disclose to a defendant.  Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:
>
> . . . .
>
> (d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. <u>This paragraph does not apply to rebuttal witnesses or those called for impeachment only</u>.
>
> (e) Any relevant written or recorded statements of a witness named on a list under par. (d), including . . . any reports or statements of experts made in connection with the case . . . and the results of any physical or mental examination, scientific test, experiment or comparison that the district attorney intends to offer in evidence at trial.
>
> . . . .
>
> (g) Any physical evidence that the district attorney intends to offer in evidence at the trial.
>
> . . . .

(7m) Sanctions for failure to comply. (a) The court shall exclude any . . . evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply.

(Emphasis added.)

### 1. General principles

¶24 When interpreting the meaning of Wis. Stat. § 971.23, we begin with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry," and the statute will be applied according to that plain meaning. Id., ¶¶45-46 (internal quotation marks omitted). Statutes are interpreted in context, as they relate to each other. Id., ¶46.

¶25 Wisconsin Stat. § 971.23(1)(d) has an exception for disclosure of rebuttal evidence that has been interpreted by appellate courts on other occasions. Such interpretations have concluded that the plain meaning of § 971.23(1)(d) does not require the State to disclose "rebuttal witnesses or those called for impeachment only." See Lunde v. State, 85 Wis. 2d 80, 91, 270 N.W.2d 180 (1978).

¶26 Appellate courts also have concluded that the State has no obligation under Wis. Stat. § 971.23(1)(d) to disclose rebuttal evidence, even when the State anticipates before trial that certain evidence may be used for rebuttal. State v. Konkol, 2002 WI App 174, ¶1, 256 Wis. 2d 725, 649 N.W.2d 300.

¶27 Notwithstanding that the State has no statutory discovery obligation to disclose rebuttal evidence, where the

circuit court determines that the State has failed to comply with the initial requirements set forth in Wis. Stat. § 971.23(1), the court "shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply." § 971.23(7m)(a).

¶28 Such an initial order under Wis. Stat. § 971.23(7m)(a) was made by the circuit court in this case when the fingerprint evidence and related testimony that would have been used for the State's case-in-chief was excluded. Notwithstanding this order, after Novy testified, the State asserts that the fingerprint evidence and related testimony became rebuttal evidence. No appellate court has determined what, if any, effect paragraph (7m)(a) has on paragraph (1)(d)'s exception for discovery of rebuttal testimony.

¶29 Furthermore, in addition to statutory provisions governing disclosure of evidence by the State, we have long recognized the circuit court's discretion on evidentiary matters, including the exclusion and admission of evidence on rebuttal. See Howard v. Beldenville Lumber Co., 129 Wis. 98, 110-11, 108 N.W. 48 (1906); McGowan v. Chi. & Nw. Ry. Co., 91 Wis. 147, 153-54, 64 N.W. 891 (1895).

¶30 We have set forth a relatively broad general rule to define rebuttal evidence. We have explained that rebuttal evidence is that "which squarely meets and controverts some affirmative fact or facts which the adversary has attempted to

13

prove." State v. Watson, 46 Wis. 2d 492, 499, 175 N.W.2d 244 (1970) (internal quotation marks omitted).

¶31 Furthermore, even with this general rule for rebuttal evidence, we have consistently reaffirmed a circuit court's broad discretion to admit "evidence of any acts or circumstances which are inconsistent with the relevant testimony of [a] witness. Any evidence, otherwise proper, which in any respect tends to contradict the witness, is admissible for this purpose." Id. at 500 (internal quotation marks omitted).

¶32 Indeed, we have affirmed circuit courts' discretion to admit evidence in rebuttal even if the evidence tends to corroborate the case-in-chief, see McGowan, 91 Wis. at 154, and where the evidence could have been submitted in the State's case-in-chief, see Watson, 46 Wis. 2d at 500. In those instances, we have recognized that the admission of such evidence may be "necessary to achieve justice," and the determination of what is necessary in those instances is subject to the circuit court's discretion. Id. at 499 (internal quotation marks omitted).

¶33 However, appellate courts have implied that evidence is not appropriate in rebuttal where it is plain that the evidence was withheld from the case-in-chief for dramatic effect or to ambush the defendant, although this rule would be subject to the necessities of justice. See Lunde, 85 Wis. 2d at 91-92; McGowan, 91 Wis. at 154; cf. Konkol, 256 Wis. 2d 725, ¶¶15-19 (rejecting circuit court's determination that an expert's

14

testimony was "not really rebuttal" and that it "could have been proffered during the case in chief").

¶34 Wisconsin courts have come to refer to evidence that is proper for rebuttal as "bona fide rebuttal evidence." See Lunde, 85 Wis. 2d at 91; State v. Sandoval, 2009 WI App 61, ¶30, 318 Wis. 2d 126, 767 N.W.2d 291. Specifically, appellate courts have defined bona fide rebuttal evidence as that which (1) was not necessary to the State's (or plaintiff's) case-in-chief, and (2) which became necessary and appropriate when the defense made its case. See Lunde, 85 Wis. 2d at 91-92. Bona fide rebuttal evidence is not determined by asking whether the evidence could have been admitted in the State's case-in-chief, but rather whether the evidence became necessary and appropriate because it controverts the defendant's case. See Konkol, 256 Wis. 2d 725, ¶18; Lunde, 85 Wis. 2d at 91-92.

¶35 Moreover, rebuttal evidence is no less bona fide when the State is able to anticipate the defense's theory or particular pieces of evidence. See Konkol, 256 Wis. 2d 725, ¶15. Once the defendant raises a particular theory, the defendant's veracity and the credibility of that theory become relevant issues in the case. See id., ¶17. The State's ability to predict or anticipate the defendant's theory does not diminish the necessity or propriety of otherwise bona fide rebuttal evidence. See id., ¶17 & n.6. To the extent that the State is better able to prepare a strong rebuttal to the defense theory, the truth-seeking function of litigation is better served, in that the possibility of such rebuttal will keep the

15

defendant honest, or at least afford the State an opportunity to shed light upon questions raised by the defense's case. See id., ¶17 n.6.

## 2. Application

¶36 As we apply the principles set out above, we will uphold a circuit court's decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion. Miller v. Hanover Ins. Co., 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493.

¶37 The circuit court's discussion of whether the fingerprint evidence and related testimony was proper rebuttal evidence shows consideration of the relevant facts and is consistent with the discovery statute, Wis. Stat. § 971.23, as interpreted by appellate courts. Following opening statements, Novy objected to the use of the fingerprint evidence and related testimony based on the State's failure to provide the defense with access to the fingerprint cards that were to be used by the State's witnesses.[7] The circuit court agreed with Novy and held that, under § 971.23(7m)(a), the State could not use the

---

[7] The parties do not dispute that the State provided the defense with a report of the State's expert, Todd Thorne, detailing the conclusions of his analysis of the fingerprints. The circuit court concluded, however, that the report was insufficient under Wis. Stat. § 971.23(1)(g), which requires the State to provide access to "[a]ny physical evidence that the district attorney intends to offer in evidence at the trial." On that basis, the court excluded from the State's case-in-chief both the physical fingerprint evidence and the State's expert's testimony.

fingerprint evidence in its case-in-chief, although the court reserved judgment on whether the evidence would be admissible in rebuttal.

¶38 The circuit court's interpretation of Wis. Stat. § 971.23——including the State's discovery obligations and the applicable sanctions for discovery violations——is supported by the plain meaning of the statute as interpreted by appellate courts.  Section 971.23(1)(g) requires the State to disclose "any physical evidence" that the State intends to offer in evidence at trial, and upon failure to comply with that provision, § 971.23(7m)(a) requires that the court "shall exclude any . . . evidence not presented for inspection or copying required by [§ 971.23]."  Accordingly, the court's initial decision to exclude the fingerprint evidence and related testimony from the State's case-in-chief was in accord with the plain language of the statute.

¶39 Novy contends that once the circuit court excluded the fingerprint evidence and related testimony, the court was without discretion to allow the evidence or testimony on rebuttal.  Novy relies on Wis. Stat. § 971.23(7m)(a)'s statement that, upon finding that the State has violated its discovery obligations, "[t]he court shall exclude any witness not listed or evidence not presented for inspection . . . unless good cause is shown for failure to comply."  He asserts that this provision withdraws the circuit court's discretion to later allow such evidence for purposes of rebuttal.  Appellate court decisions, however, have suggested otherwise.

17

¶40  As noted above, the discretion afforded circuit courts has been reaffirmed numerous times since the enactment of the discovery statute.  See Konkol, 256 Wis. 2d 725, ¶¶15–18.  In Konkol, the court of appeals determined that the circuit court had erroneously excluded rebuttal evidence, where the circuit court had concluded that the State's use of the evidence in rebuttal was an attempt to circumvent the disclosure requirements of Wis. Stat. § 971.23(1)(d).  Id., ¶¶5–7, 18.  Relying on our decision in Lunde, 85 Wis. 2d at 91–92, the court of appeals in Konkol reaffirmed the principle that the proper analysis for determining whether evidence is "bona fide rebuttal evidence" is not whether the evidence could have been admitted in the State's case-in-chief, but rather whether the evidence became necessary and appropriate upon presentation of the defense's case.  Konkol, 256 Wis. 2d 725, ¶18.

¶41  This test for bona fide rebuttal evidence effectively harmonizes the plain language of the sanctions provision in the discovery statute and the discretion of the circuit court.  The sanctions provision of the discovery statute, Wis. Stat. § 971.23(7m)(a), provides that "[t]he court shall exclude" evidence for which the State failed to comply with the disclosure requirements.  Here, the circuit court did just that: upon determining that the State failed to provide proper access to the fingerprint cards, that evidence and related testimony was excluded from the State's case-in-chief.

¶42  However, notwithstanding the initial exclusion, such an exclusion need not be absolute because circuit courts retain

18

significant discretion to admit rebuttal evidence, even when such evidence was not disclosed for use in the case-in-chief. See id. (relying on Lunde, 85 Wis. 2d at 91-92); cf. Wold v. State, 57 Wis. 2d 344, 355, 204 N.W.2d 482 (1973) (recognizing that in the context of impeachment of a defendant by a prior inconsistent statement that was obtained in violation of the warnings required under Miranda v. Arizona, 384 U.S. 436 (1966), the proper focus is on the statement's trustworthiness, or lack thereof, not on whether the statement was excluded from the State's case-in-chief).  Moreover, as relevant here, the circuit court's discretion to admit evidence on rebuttal is particularly broad "when the evidence is necessary to achieve justice." Watson, 46 Wis. 2d at 499 (internal quotation marks omitted).

¶43 During the defense's case, Novy testified that he did not call Julie from the payphone at L&M Meats on the night of November 9, 2008.  This statement raised an issue of credibility between Novy's and Julie's accounts of what occurred that evening because Julie had previously testified that she had received such a phone call and implicated Novy.  Accordingly, after Novy's testimony, admission of testimony related to the fingerprint evidence became necessary and appropriate as rebuttal testimony to contradict Novy's testimony.

¶44 Furthermore, neither the State's pointed question (whether Novy called Julie from the payphone that night) nor the fact that Novy might have used the phone on other occasions diminished the propriety of the State's use of the fingerprint evidence and related testimony in rebuttal.  As we have said,

the standard for rebuttal evidence is quite broad:  any evidence otherwise admissible that "in any respect tends to contradict the witness, is admissible" for rebuttal.  Id. at 500 (internal quotation marks omitted).  On this standard, we cannot say that the circuit court erroneously exercised its discretion in allowing the State to offer testimony that tended to undermine or contradict Novy's testimony regarding his use of the payphone at L&M Meats on November 9, 2008.[8]

¶45 Accordingly, we conclude that the circuit court's interpretation of the statute was consistent with prior appellate decisions, and that the circuit court's decision to allow testimony relating to fingerprint evidence on rebuttal was not an erroneous exercise of discretion.

## C.  Juror Inattentiveness

¶46 The second issue Novy raises is that the circuit court erred by denying Novy's motion to strike a juror whom defense counsel claimed was sleeping during the defense's closing

---

[8] Novy also argues that the fingerprint-related testimony became irrelevant once the applicable bail jumping charge (Count 7) was dismissed.  However, the nature of the offense of stalking suggests that Novy's conduct relevant to the bail jumping charge (viz., calling Julie at home) was equally relevant to demonstrate the course of conduct for stalking.  See State v. Conner, 2011 WI 8, ¶28, 331 Wis. 2d 352, 795 N.W.2d 750 (discussing the nature of the offense of stalking).  This is so because if the jury believed that Novy called Julie from L&M Meats on the night in question, such facts would tend to support the State's theory that Novy had engaged in a course of conduct that Novy knew or should have known would cause Julie to suffer serious emotional distress, and that did in fact cause such distress.  See Wis. Stat. § 940.32(2)(a), (b), and (c) (setting forth elements of the offense of stalking).

argument.  This argument is based on the constitutional right to an impartial jury and due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.  See State v. Kettner, 2011 WI App 142, ¶23, 337 Wis. 2d 461, 805 N.W.2d 132.

### 1.  General principles

¶47  The right to a fair trial by an impartial jury underlies the requirement that jurors have heard all of the material portions of the trial.  See id.  "The absence of this condition, whether it is due to a hearing deficiency or a state of semi-consciousness, could imperil the guarantees of impartiality and due process."  Id. (quoting State v. Hampton (Hampton I), 201 Wis. 2d 662, 668, 549 N.W.2d 756 (Ct. App. 1996) (internal quotation marks omitted).  Review of an allegation of juror inattentiveness involves a twofold inquiry: First, the circuit court must determine, as a question of fact, whether the juror was actually inattentive to the point of potentially undermining the fairness of the trial; here, whether the juror was sleeping.  See State v. Hampton (Hampton II), 217 Wis. 2d 614, 621, 579 N.W.2d 260 (Ct. App. 1998).  Second, if the circuit court finds that the juror was in fact sufficiently inattentive, the court must determine whether the defendant suffered prejudice as a result of the juror's inattentiveness. See id.

¶48  As with evidentiary issues, questions involving juror conduct and attentiveness implicate the circuit court's broad

21

discretion.  See id.  Accordingly, although we review a circuit court's prejudice analysis as a matter of law, we will uphold a circuit court's factual findings regarding the conduct and attentiveness of the jurors, unless those findings are clearly erroneous.  See Kettner, 337 Wis. 2d 461, ¶12.

## 2.  Application

¶49  Our decision on this issue rests on the absence of a necessary factual finding by the circuit court that a juror was sleeping.  See id.  Without such a finding, we need not address the question of law this issue presents, i.e., whether the juror's alleged sleeping prejudiced Novy.

¶50  After completion of closing arguments, defense counsel sought a sidebar during which he moved to strike the allegedly sleeping juror.  Judge Kluka denied the motion and, after the jury left the courtroom, counsel was afforded an opportunity to make a record of his objection.  During that discussion, Judge Kluka noted that she considered the defense counsel's request, but that she did not see the juror sleeping.  Additionally, Judge Kluka also noted that she had kept "track of what's going on with the jurors fairly well," and that she had "paid very[,] very close attention to the demeanor and conduct of the jurors."

¶51  In explaining the reason for her ruling, the circuit court did not find that the juror was sleeping, and therefore, Novy did not establish a fact necessary to his motion to strike.  On this record, we cannot say that the circuit court's findings are clearly erroneous because they did not include a finding that the juror was sleeping.  Because we accept such findings,

22

we do not discuss this legal challenge further.[9]  Accordingly, we affirm the circuit court's denial of Novy's motion to strike the allegedly sleeping juror from further participation in his trial.

### III.   CONCLUSION

¶52 We conclude that, with regard to the admission of rebuttal fingerprint-related testimony, the circuit court did not erroneously exercise its discretion.   The circuit court initially determined that the State had failed to comply with its discovery obligations under Wis. Stat. § 971.23(1); and therefore, the court excluded fingerprint evidence and related testimony    from    the    State's    case-in-chief    pursuant    to

---

[9] At oral argument,  counsel for Mr. Novy was questioned about whether the circuit court made findings regarding the allegedly sleeping juror.  Justice Roggensack said that it seemed "the trial court made a finding that she didn't see that there was any juror sleeping."  Counsel for Mr. Novy responded, "You know, judge, I read that, and that certainly is true, but I don't think the judge in [her] decision made that the issue.  I think [she] made the issue that you just don't have to have a juror listen to closing arguments if they choose not to listen." Oral Argument at 4:40, State v. Novy, 2011AP407-CR, available at http://www.wiseye.org/Programming/VideoArchive/ArchiveList.aspx?cv=34.

Counsel for the State noted defense counsel's concession on the trial court's finding, and reiterated that it was the State's position that "the circuit court made a finding that the juror was not sleeping," but that the court also "went that step further and said 'Even if the juror was sleeping, then [the court doesn't] find any prejudice because this wasn't testimonial.'"  Underscoring this point, counsel for the State concluded that "On these facts, [although] there was no . . . explicit finding, . . . I think it can definitely be interpreted as a finding of fact that the juror was not asleep." Id. at 27:00.

§ 971.23(7m)(a).   However, after Novy testified such that the excluded fingerprint evidence and related testimony would controvert his testimony, the circuit court concluded that it could be presented in rebuttal.   The circuit court properly interpreted § 971.23 under the facts of this case, and given the significant discretion afforded circuit courts on evidentiary matters, we cannot say that the circuit court erroneously exercised its discretion in permitting the rebuttal use of the fingerprint evidence and related testimony.

¶53   With regard to the circuit court's treatment of the allegedly sleeping juror, the circuit court did not find that the juror was sleeping; and therefore, Novy failed to establish a finding necessary to his contention.   The circuit court's findings are not clearly erroneous; and therefore, we will not overturn the circuit court's refusal to strike the juror. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶54   DAVID T. PROSSER, J., did not participate.

24

¶55 SHIRLEY S. ABRAHAMSON, C.J.  *(concurring).*  I write separately for two reasons.  First, I disagree with the majority opinion's interpretation and application of Wis. Stat. § 971.23 to the undisputed facts in the present case.  Second, I disagree with the majority opinion's approach to the second issue, namely the allegedly sleeping juror.

I

¶56 The majority opinion does not address the difficult issue of law facing the court, namely interpreting and applying the text of Wis. Stat. § 971.23 to the undisputed facts of the case.  The majority opinion carefully reprints the text of the statute but then ignores the words themselves.  Indeed, the majority opinion masks, avoids, and seems oblivious to the difficult statutory interpretation issue by failing to distinguish between witness testimony, which is governed by Wis. Stat. § 971.23(1)(d) and physical evidence, which is governed by § 971.23(1)(g).

¶57 The question presented in the instant case is, according to the court of appeals,[1] the State, and the defendant, whether <u>fingerprint evidence</u> (physical evidence)[2] excluded from the State's case-in-chief as a discovery sanction may later be

---

[1] <u>State v. Novy</u>, 2012 WI App 10, ¶9, 338 Wis. 2d 439, 809 N.W.2d 889.

[2] It is undisputed that the fingerprint evidence in this case is "physical evidence."  Fingerprint evidence has been categorized as "physical evidence" on multiple occasions.  <u>See, e.g.</u>, <u>State v. Martin</u>, 2012 WI 96, ¶63, 343 Wis. 2d 278, 816 N.W.2d 270; <u>State v. Armstrong</u>, 2005 WI 119, ¶63, 283 Wis. 2d 639, 700 N.W.2d 98; <u>State v. Stuart</u>, 2005 WI 47, ¶54, 279 Wis. 2d 659, 695 N.W.2d 259.

used by the State in its rebuttal witnesses' testimony to challenge the defendant's testimony. In other words, the issue is not whether the expert witnesses can be rebuttal witnesses. They can under the statute at issue and relevant case law. The issue, rather, is whether the State can, while questioning its rebuttal expert witnesses, introduce into evidence and have the witnesses testify about the physical fingerprint evidence that has been excluded under Wis. Stat. § 971.23.

¶58 The majority opinion does not directly answer the question presented in the instant case. Instead, the majority opinion states a different question: whether the trial court erred when it allowed the State to use <u>certain fingerprint evidence and related testimony</u> in rebuttal. Majority op., ¶1. The majority opinion seems to answer yet another question (changing the phrase "fingerprint evidence and related testimony" in the question to "fingerprint-related testimony" in the answer): "We conclude that, with regard to the admission of <u>fingerprint-related testimony</u> on rebuttal, the circuit court did not erroneously exercise its discretion [to admit the rebuttal testimony]." Majority op., ¶2.[3]

¶59 The majority opinion meshes physical evidence (the fingerprint cards) and the witnesses' testimony and thus shifts the focus of inquiry from physical evidence to testimony.

---

[3] Yet sometimes the majority opinion seems to address the admissibility of the fingerprint evidence itself. <u>See, e.g.</u>, majority op., ¶37.

¶60 Throughout the opinion the majority uses the words "testimony" and "evidence" either interchangeably[4] or in combination in some phrase,[5] all the while stating that it is applying the plain meaning of Wis. Stat. § 971.23. The case law upon which the majority relies, case law that is pre- and post-the present version of § 971.23, addresses only testimony; the case law does not address physical evidence or testimony related to physical evidence. Yet § 971.23 treats testimony and physical evidence separately——and differently. That's the rub.

¶61 I look first at Wis. Stat. §§ 971.23(1)(d) and (1)(g).[6] Wisconsin Stat. § 971.23(1)(d) requires that before trial, the

---

[4] See, e.g., majority op., ¶25, in which the majority states that Wis. Stat. § 971.23(1)(d) "has an exception for disclosure of rebuttal evidence." Not true. Section 971.23(1)(d) excepts rebuttal testimony.

[5] The majority opinion repeatedly refers to the State's use of "certain fingerprint evidence and related testimony in rebuttal" or some such mixed reference to fingerprint physical evidence and testimony of a witness. See, e.g., majority op., ¶¶1, 2, 11, 14, 23, 28, 37, 39, 43, 44, 52.

[6] Wis. Stat. § 971.23, Discovery and Inspection:

(1) What a district attorney must disclose to a defendant. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:

. . . .

(d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.

district attorney must disclose to the defendant a list of all witnesses whom the district attorney intends to call at trial. Wisconsin Stat. § 971.23(1)(g) requires the district attorney to disclose any physical evidence that the district attorney intends to use at trial.

¶62 The statute governing discovery of the witness list, § 971.23(1)(d), makes an exception for a rebuttal or impeachment witness. Such a witness need not be included on the list of witnesses disclosed before trial.

¶63 In contrast, the statutory provision governing discovery of physical evidence, § 971.23(1)(g), does not provide a similar exception for rebuttal or impeachment evidence.

¶64 What are we to make of this different treatment in the statute of testimony and physical evidence? Testimony and physical evidence are not synonymous. "Testimony" and "physical evidence" are different types of evidence.

¶65 I begin my discussion by reciting what happened at the trial court.

¶66 The physical evidence at issue was two "cards" containing fingerprints. One card contained the defendant's known fingerprints; the other card contained fingerprints lifted from the pay phone. Prior to trial, the State failed to disclose to the defendant the physical evidence——the fingerprint cards——it intended to use at trial. Disclosure of physical

---

. . . .

(g) Any physical evidence that the district attorney intends to offer in evidence at trial.

4

evidence prior to trial is required by Wis. Stat. § 971.23(1)(g).

¶67 The defendant moved to exclude the physical fingerprint evidence. The trial court granted the defendant's motion and prohibited the State from introducing this physical fingerprint evidence at trial. The ruling comports with Wis. Stat. § 971.23(1)(g), although the circuit court did not specifically refer by number to this paragraph of the statute. The State does not challenge the trial court's exclusion of the physical fingerprint evidence from its case-in-chief.

¶68 Even though the trial court had excluded the physical fingerprint evidence from the State's case-in-chief, the State still sought to call the fingerprint experts in its case-in-chief. The experts would have testified about their examination of the fingerprints on the two cards and their conclusion that the known fingerprints matched the fingerprints lifted from the pay phone. The trial court refused to allow the experts to testify in the State's case-in-chief because their testimony relied on the physical fingerprint evidence that had been excluded. The trial court concluded that without the physical fingerprint evidence, none of the experts' testimony was relevant to the case. The State does not challenge the trial court's exclusion of the witnesses from its case-in-chief.

¶69 Indeed, the majority opinion concludes, as do I, that the trial court validly excluded the fingerprint cards and the expert testimony that would have been based on the cards from the State's case-in-chief. Majority op., ¶38.

¶70 The problem arose when the State sought to introduce the previously excluded physical fingerprint evidence in rebuttal. According to the text of the statute, Wis. Stat. § 971.23(7m)(a) provides the sanction for failure to disclose physical evidence: "The court <u>shall exclude</u> any witness not listed or <u>evidence not presented for inspection or copying required by this section</u>, <u>unless good cause is shown for failure to comply</u>. The court may in appropriate cases grant the opposing party a recess or a continuance" (emphasis added).

¶71 Despite Wis. Stat. § 971.23(7m)(a) excluding the physical fingerprint evidence that wasn't presented for inspection, the circuit court, without any analysis of the statute or case law, simply announced that there was no distinction between a witness and physical evidence and that a rebuttal witness can bring in any kind of physical evidence that the State may wish to use in connection with that witnesses' testimony.[7] The circuit court laid down a rule of law that the bench and bar could readily apply.

¶72 Because the majority opinion does not analyze the relationship between testimony and physical evidence and the application of the text of Wis. Stat. § 971.23(7m)(a) to both,

---

[7] The defendant did not see the fingerprint cards before they were introduced into the record on rebuttal, and therefore the defendant was unable to procure his own expert to challenge the State's experts' testimony.

Although the State had not listed the names of the witnesses who would testify about the fingerprints, the defendant had a copy of the fingerprint report and knew the names of the fingerprint experts.

the majority opinion, unlike the ruling of the circuit court, is muddled and fails to give proper guidance to the bench and bar.

¶73 For help in interpreting the present statute, I have examined the cases cited in the majority opinion. Although past cases upon which the majority opinion relies sometimes used the words "testimony" and "evidence" interchangeably in rebuttal witness cases,[8] none of the cases is relevant for resolving the issue presented here because each case dealt with testimony, not physical evidence.[9]

---

[8] That the words "testimony" and "evidence" are sometimes used interchangeably should not be surprising. After all, testimony is one type of evidence. In many instances it might not matter whether a court uses the word "evidence" or "testimony." In the present case, however, the applicable statute treats the two separately and differently.

[9] See, e.g., cases cited at majority op., ¶¶25, 26, 29-35, 40, 42, 44.

State v. Lunde, 85 Wis. 2d 80, 270 N.W.2d 180 (1978) (State was permitted to present bona fide rebuttal witness testimony from a witness who had not been previously identified to the defendant because the rebuttal witness's testimony was only necessary and appropriate once the defendant testified. State action was permitted under old Wis. Stat. § 971.23(3)(a), which is now § 971.23(1)(d)).

State v. Watson, 46 Wis. 2d 492, 499-500, 175 N.W.2d 244 (1970) (Decided before the statute was enacted. State could present "rebuttal evidence" through "rebuttal witnesses" to impeach the credibility of a testifying defendant).

Howard v. Beldenville Lumber Co., 129 Wis. 98, 108 N.W. 48 (1906) (Decided before the statute was enacted. The plaintiff had wide discretion to present rebuttal testimony to contradict the defendant's testimony. The court used the term "evidence" to refer to rebuttal "testimony" that did not include any "physical evidence.").

¶74 I have also reviewed the history of Wis. Stat. § 971.23 going back to the 1969 enactment of the first version of the statute.[10]  What is clear from the statutory history is that since the statute's enactment, the defendant's discovery of the list of witnesses and discovery of physical evidence were treated differently in two distinct statutes.[11]  The statute

---

McGowan v. Chicago & N.W. Ry. Co., 91 Wis. 147, 64 N.W. 891 (1895) (Decided before the statute was enacted.  The plaintiff could call witnesses on rebuttal even though the plaintiff had known the witnesses existed before trial and had considered calling them in the case-in-chief.).

State v. Sandoval, 2009 WI App 61, ¶¶30-31, 318 Wis. 2d 126, 767 N.W.2d 291 (State could call a rebuttal witness whose testimony about what he saw included exculpatory evidence that had not been disclosed to the defendant before trial pursuant to Wis. Stat. § 971.23(1)(h)).

State v. Konkol, 2002 WI App 174, ¶18, 256 Wis. 2d 725, 649 N.W.2d 300 (State had no duty to list a rebuttal witness under Wis. Stat. § 971.23(1)(d) even if the prosecutor knew before trial that the witness would be called.  Testimony, not physical evidence, was admitted.).

[10] The current statute requiring a district attorney to provide pretrial discovery to a defendant was created by ch. 255, Laws of 1969, a complete redraft of the criminal procedure statutes undertaken by the Criminal Rules Committee established by the Judicial Council.

[11] Wis. Stat. § 971.23(3)(a) (1969-70), List of Witnesses:

A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial.  Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial.  This section

governing discovery of witnesses included an exception for rebuttal and impeachment witnesses, while the statute governing discovery of physical evidence did not include such an exception.[12] The 1969 statute and the revisions, including the present version, preserve this distinction.

¶75 I conclude that Wis. Stat. § 971.23(1) does not explicitly authorize a trial court to admit physical evidence on rebuttal. Perhaps other legal principles can support the admission of the previously excluded physical fingerprint evidence in the State's case on rebuttal. The majority opinion hints that perhaps admissibility should hinge on trustworthiness, and that the general principles of impeachment

---

shall not apply to rebuttal witnesses or those called for impeachment only.

Wis. Stat. § 971.23(4) (1969-70) Inspection of Physical Evidence:

On a motion of a party subject to s. 971.31(5), all parties shall produce at a reasonable time and place designated by the court all physical evidence which each party intends to introduce in evidence. Thereupon, any party shall be permitted to inspect or copy such physical evidence in the presence of a person designated by the court. The order shall specify the time, place and manner of making the inspection, copies or photographs and may prescribe such terms and conditions as are just.

[12] The current criminal discovery statute took its present form in 1996 after the enactment of 1995 Wisconsin Act 387, which repealed, renumbered, and recreated certain portions of the old statute. The analysis of 1995 Assembly Bill 721 (which became 1995 Act 387) by the Legislative Reference Bureau indicates that the new bill aimed to eliminate old arduous procedure requirements in favor of simpler, more responsive discovery of witness lists and physical evidence.

9

testimony should apply to the present case.  See majority op., ¶42.[13]

¶76  In any event, I concur in the mandate because I agree with the State that if the admission of the fingerprint evidence in rebuttal was error, it was harmless error in the present case.

II

¶77  I turn now to the second issue, the allegedly sleeping juror.

¶78  The majority embarks on its own new theory about the allegedly sleeping juror——a theory that was neither briefed nor argued by the parties.  This theory asserts that the circuit court based its decision on findings of fact.  I disagree with the majority opinion.

¶79  The circuit court did not base its decision on any factual findings.  Rather, the circuit court based its decision on a legal conclusion:  Even if the defendant's factual allegations that the juror was sleeping were true, the defendant was not prejudiced.

¶80  Rather than addressing the actual legal basis of the decision of the circuit court, the majority opinion fails to even mention it.  Because the majority opinion's analysis arrives at conflicting conclusions, mischaracterizes the circuit court record and ultimately fails to provide guidance to circuit courts on how they should proceed when confronted with a

---

[13]  See also Novy, 338 Wis. 2d 439, ¶¶14, 15.

challenge that a juror was sleeping, I write separately to address this issue.

A

¶81 The majority's theory and analysis of the sleeping juror issue rests on its discussion of the circuit court's findings of facts——findings that the circuit court never made.

¶82 At the outset of its discussion of the sleeping juror issue, the majority opinion states that review of the issue involves a twofold inquiry. First, the circuit court must determine, as a question of fact, whether the juror was sleeping. Majority op., ¶47. Second, the circuit court must determine whether the defendant suffered prejudice as a result of the juror's inattentiveness. Id.

¶83 After this set-up of the inquiry, the majority opinion then provides the standard of review: "[A]lthough we review a circuit court's prejudice analysis as a matter of law, we will uphold a circuit court's factual findings regarding the conduct and attentiveness of the jurors, unless those findings are clearly erroneous." Majority op., ¶48.

¶84 Throughout its opinion, the majority repeatedly concludes that the circuit court "did not find that the juror was sleeping." Majority op., ¶¶3, 22, 51, 53. The majority opinion also states that its decision "rests on the absence of a necessary factual finding by the circuit court that a juror was sleeping." Majority op., ¶49. Nevertheless, the majority opinion simultaneously applies the standard of review to the non-existent finding and concludes that the circuit court's

11

"findings are not clearly erroneous." See majority op., ¶¶3, 22, 51, 53.

¶85 The majority opinion emphasizes that the circuit court "had not seen the juror sleeping," majority op., ¶¶17, 50, and mentions the circuit court's statement that it tries "to keep track of what's going on with the jurors." Majority op., ¶17. Ultimately, the majority opinion concludes that "[o]n this record, we cannot say the circuit court's findings are clearly erroneous because they did not include a finding that the juror was sleeping." Majority op., ¶51.

¶86 Thus, on the one hand, the majority opinion concludes that the circuit court made no finding that the juror was sleeping. Majority op., ¶¶3, 22, 51, 53. The circuit court also made no finding that the juror was not sleeping. In other words, the circuit court made no finding of fact about whether the juror was or was not sleeping. Nevertheless, the majority opinion paradoxically concludes that the circuit court's findings on the issue are not clearly erroneous.

¶87 In order to determine whether a finding of historical fact is clearly erroneous, it is axiomatic that there must first be a finding of historical fact.[14] Yet the majority opinion does not mention any other findings of fact that the circuit court made related to this issue of juror inattentiveness. The

---

[14] See, e.g., State v. Owens, 148 Wis. 2d 922, 926-27, 436 N.W.2d 869 (1989).

12

majority opinion appears to review a sole finding of fact that it acknowledges never occurred.[15]

¶88 Even a cursory review of the record reveals that the circuit court undertook no factual inquiry into whether the juror was sleeping. The circuit court did not voir dire the allegedly sleeping juror, did not take any testimony, and did not consider other admissible evidence in the record on this fact.

¶89 Furthermore, the majority opinion's reliance on the circuit court's statements that it did not see the juror sleeping similarly cannot be the basis for the elusive "findings" on which the majority opinion rests its conflicting conclusions. This court has held that a "circuit court may not rely on its own personal observations of events not contained in the record." State v. Anson, 2005 WI 96, ¶33, 282 Wis. 2d 629, 698 N.W.2d 776. Furthermore, a judge presiding at a trial cannot testify as a witness.[16]

¶90 It is the majority's misplaced focus on non-existent findings of fact that gets the majority into analytical trouble. The only reference to a finding of fact related to a sleeping

___

[15] "On this record, we cannot say that the circuit court's findings are clearly erroneous because they did not include a finding that the juror was sleeping. Because we accept such findings, we do not discuss this legal challenge further." Majority op., ¶51.

[16] State v. Anson, 282 Wis. 2d 629, ¶¶33, 34 & n.3, 698 N.W.2d 776 (citing Wis. Stat. §§ 906.05 & 902.01(2)); State v. Hampton (Hampton I), 201 Wis. 2d 662, 672-73, 549 N.W.2d 756 (Ct. App. 1996). For additional discussion on the issue of a circuit court's personal observation and judicial notice, see ¶¶105-119, infra.

juror in the majority's entire opinion is its reference to what it describes as a non-existent finding.

¶91 Although the majority acknowledges that the first step when presented with an sleeping juror issue is to determine whether the juror was in fact sleeping, the majority fails to acknowledge that such a determination never occurred in the present case.

B

¶92 The majority's approach to "facts" and its contradictory conclusions appear to stem from its mischaracterization of the record. The circuit court determined that "even assuming what [the defense attorney alleged about the sleeping juror] is correct," the law does not automatically require the juror's removal.

¶93 The majority selectively quotes the circuit court to make it appear as if the circuit court found that the juror was not sleeping, without actually stating that the circuit court found that the juror was not sleeping. However, the context of what occurred before the circuit court is different from what the majority appears to describe.

¶94 The defendant's attorney raised the issue about the juror before the circuit court by advising the court that he had seen a juror sleeping during his closing argument. The defendant's attorney described what he saw as follows:

> MR. CICCHINI: Just for the record. I saw his eyes closed and his head nod down on one occasion[], and I saw his eyes closed on several occasions.

14

¶95 In response, the State acknowledged that the juror may not have been paying rapt attention during closing arguments, but noted that she had not seen any indication that the juror was sleeping during the presentation of evidence:

MS. JAY: I certainly observed that he was not paying rapt attention, but I——I'll just take it personally. I didn't see anything during the trial during evidence that indicated to me that he was asleep during the evidence portion. So, I just didn't think it was necessary to make him the 13th juror.

¶96 The circuit court then stated its reasoning for denying the defendant's motion to strike the alleged sleeping juror. It observed that it was aware of case law that may require removal if the juror is sleeping during the presentation of evidence. Here, however, the allegation was that the juror was sleeping during closing arguments. The circuit court determined that "<u>even assuming</u> what [the defendant's attorney] alleged about the sleeping juror] is correct," the law does not automatically require the juror's removal. Counsels' presentation and the full reasoning of the circuit court are as follows:

MR. CICCHINI: Would you like to do the juror issue real quick? I'd like to make a record real quick that I brought up at the side bar?

THE COURT: Oh, sure.

MR. CICCHINI: During the side bar, I made a motion to strike as the——or have removed or strike as the 13th juror——Miss Jay [the prosecuting attorney] can maybe confirm this——I think his name was [juror's name]?

MS. JAY: Correct.

MR. CICCHINI: Okay. He was in the lower right hand corner. He had a Cubs shirt on, dark hair; and

15

noticed him sleeping during the closing——my closing argument——and because I——I was trying to make eye contact with him, and I noticed that. I move to strike. I believe that Miss Jay concurred that she—— well she can speak for herself; but she noticed similar and opposed the motion. The court denied the motion. And I think that summarizes it.

THE COURT: The motion to strike him as the alternate juror.

MR. CICCHINI: Yes, alternate juror. Yes.

THE COURT: Attorney Jay.

MS. JAY: I certainly observed that he was not paying rapt attention, but I——I'll just take it personally. I didn't see anything during the trial during evidence that indicated to me that he was asleep during the evidence portion. So I just didn't think it was necessary to make him the 13th juror.

MR. CICCHINI: Oh, I'm sorry. I guess——could I just describe in brief detail what I saw?

THE COURT: Sure.

MR. CICCHINI: Just for the record. I saw his eyes closed and his head nod down on one occasion, and I saw his eyes closed on several occasions.

THE COURT: During your closing.

MR. CICCHINI: Yes. Thank you.

THE COURT: Did you see it during Attorney Jay's closing?

MR. CICCHINI: I——one time what I think I first noticed that his——his head was down but he was rubbing his forehead and came up back up, and I did not see it then. I saw it during my closing.

THE COURT: Okay. Your observations are noted. I did consider this request at the side bar just before sending the jurors out to deliberate. I myself [] didn't notice it. I try to keep track of what's going on with the jurors fairly well. I am aware of case law which says if a juror is sleeping during testimony, during the presentation of evidence, that

16

can warrant the dismissal of that juror or [] raise some issues with respect to deliberations in the sense that the juror [] doesn't have the same basis for deliberations as the other jurors.

I——I didn't notice any of those kinds of problems while testimony was coming in during which I think I paid very——very close attention to the demeanor and conduct of the jurors.

So, <u>even assuming</u> what you say is correct, it does not automatically require removal of that juror; and <u>for that reason</u> I did not grant your request and we selected the alternate randomly instead (emphasis added).

¶97 Both parties describe the circuit court's statement as a legal conclusion reached by the circuit court's assuming the factual question. Indeed, when pressed at oral argument before this court about whether the circuit court based its decision on factual findings, the defendant's attorney rebuffed such an assertion. He responded that the issue the circuit court addressed was not the factual question of whether the juror was sleeping, but rather it was the legal question addressing the import of any juror sleeping when it allegedly occurred during closing arguments.[17]

---

[17] The complete exchange occurred as follows:

Justice Roggensack: Counselor, as I read the arguments and the materials provided, I thought that the trial court made a finding that she didn't see that there was any juror sleeping.

Defendant's Attorney: You know, [Justice Roggensack], I read that and um, that certainly is true but I don't think the judge in [her] decision made that the issue. I think [s]he made the issue that you just don't have to have a juror listen to closing argument if they choose not to listen. I mean, let's face facts, jurors may be thinking about the Green Bay Packer game during the entire closing argument and we wouldn't

¶98 After Justice Roggensack raised the issue with the defendant's attorney, the State's attorney briefly addressed the issue. The State concluded that the circuit court did not make an "explicit finding" of fact on the record regarding the sleeping juror and asked the court "to conclude that there was no prejudice."[18]

---

know that but it wouldn't really make any difference because what's important is that they listen to all the testimony and then make their decision on the testimony. Does that answer your honor's . . . ?

Justice Roggensack: Well, I thought that, to me it was a finding and we adhere to the findings of the circuit court, unless they are clearly erroneous and I thought the judge was asked about this, it was brought to her attention and she said she didn't see any jurors sleeping and I thought she said she watched the jury quite closely. So if it's a finding of fact, that's a different kind of an issue than if it's a question of law about whether we want to do something with a juror who was sleeping, you gotta get over the first step which was, was there a juror sleeping before you can get to the second step?

Defendant's Attorney: I understand that, [Justice Roggensack]. I'm not gonna disagree with that. Thank you. [The defendant's attorney proceeded to argue the issue of the rebuttal evidence.]

[18] The Assistant Attorney General's full statement is as follows:

I will do the same as defense counsel did and start with the sleeping juror issue. There weren't many questions on it but I did want to clear up something. I think he [the defendant's attorney] made the statement that it was obvious or something to that effect that the juror was sleeping or appeared to be sleeping in this case. To Justice Roggensack's point, I do believe that the circuit court made a finding that the juror was not sleeping but went that step further and said that even if the juror was sleeping, I [the circuit court] don't find any prejudice because

¶99 In any event, whether a circuit court can make a finding of fact regarding the attentiveness of a juror under the circumstances of the present case is problematic. No evidence was presented on the issue, and it is ordinarily inappropriate for a circuit court to take judicial notice of the fact that a juror was inattentive without further inquiry. See ¶¶105-122, infra.

C

¶100 The majority's mischaracterizations do not stop with the record and the circuit court's decision.

¶101 The majority opinion declares: The court of appeals concluded that the issue of the allegedly sleeping juror was "within the broad discretion of the circuit court, and that there was nothing in the record to suggest that the court had erroneously exercised its discretion." Majority op., ¶19 (citing Novy, 338 Wis. 2d 439, ¶23).

¶102 Not so! The court of appeals treated the circuit court as having based its conclusion on prejudice, not on any finding of whether the juror was in fact sleeping. The court of appeals stated: "We know of no Wisconsin case, and Novy has not cited one, in which a juror was removed for nodding off during

---

this wasn't testimonial. On these facts, there was no, it was not an explicit finding but I think it can definitely be interpreted as a finding of fact that the juror was not asleep and I think, so I just wanted to clear up that the State on the sleeping juror issue would ask this court to affirm and conclude that there was no prejudice and that the defendant failed to meet his burden on that issue. [The State then proceeded to argue the rebuttal evidence issue]. (Emphasis added.)

19

closing arguments. We therefore reject Novy's argument that the trial court erred in failing to conduct a further inquiry into whether the juror was sleeping."[19]

D

¶103 As a result of relying on a finding of fact that does not exist and mischaracterizing the record and the decisions of the circuit court and court of appeals, the majority opinion ultimately fails to undertake the ultimate question of whether the defendant's constitutional right to a fair trial was violated by juror inattentiveness.

¶104 By short-circuiting the analysis, the majority further fails to provide guidance on how circuit courts are to handle an allegation of a sleeping juror.

E

¶105 Unlike the majority opinion, I acknowledge the circuit court's stated reasoning for denying the defendant's motion to strike. The circuit court did not determine whether the defendant's allegation of a sleeping juror was true. Instead the circuit court determined that "even assuming what [Novy's attorney alleged about the sleeping juror] is correct," the law does not automatically require the juror's removal. The circuit

---

[19] Novy, 338 Wis. 2d 439, ¶23.

After reaching this conclusion, the court of appeals went on to state that defense counsel did not ask the circuit court to conduct further inquiry into whether the juror was asleep; that it would not fault the circuit court for failing to undertake a further inquiry under the circumstances of the present case; and that the circuit court did not erroneously exercise its discretion in failing to conduct a further inquiry into whether the juror was sleeping. Id.

20

court concluded that even if the juror was sleeping, as alleged, it did not prejudice the defendant.

¶106 Here, the defendant's attorney alleged that he "saw [the juror's] eyes closed and his head nod down on one occasion[]" and "saw his eyes closed on several occasions." The alleged inattentiveness occurred during defense counsel's closing argument.

¶107 The constitutional right to an impartial jury requires that the jurors "have heard all of the material testimony."[20] When a party seeks to have a juror discharged, whether it is due to sleep or for another cause, it is the circuit court's duty to "make careful inquiry into the substance of the request and to exert reasonable efforts to avoid discharging the juror."[21] Upholding juror integrity is a task assigned to the courts.[22] The ultimate question of whether the defendant's constitutional right to a fair trial was violated by juror inattentiveness is a question of law that a reviewing court determines independently.[23]

¶108 A circuit court must "approach the issue [of a sleeping juror] with extreme caution."[24]

---

[20] Hampton I, 201 Wis. 2d at 668.

[21] State v. Lehman, 108 Wis. 2d 291, 300, 321 N.W.2d 212 (1982).

[22] State v. Gonzalez, 2008 WI App 142, ¶9, 314 Wis. 2d 129, 758 N.W.2d 153.

[23] State v. Hampton (Hampton II), 217 Wis. 2d 614, 621-22, 579 N.W.2d 260 (Ct. App. 1998).

[24] Lehman, 108 Wis. 2d at 300.

21

¶109 As a threshold issue, parties must timely object in order to properly raise the issue before the circuit court. When parties notice a sleeping juror, they must bring the issue to the circuit court's attention during trial "as soon as practicable" after they notice the sleeping juror.[25]  If the objection is not timely, it may be considered "waived" or "forfeited".[26]  No one argues that the objection was not timely in the instant case.

¶110 When a timely objection is made, the circuit court may proceed in different ways depending on the circumstances of the case.  The circuit court may have to decide whether the juror was sleeping.  Because the circuit court in the instant case did not address this question, the parties did not argue in their briefs how the circuit court should have handled the question. I write to remind the bench and bar that Hampton I[27] and Hampton II[28] are instructive about what a circuit court is to do to make a finding about juror attentiveness.[29]

---

[25] State v. Saunders, 2011 WI App 156, ¶32, 338 Wis. 2d 160, 807 N.W.2d 679.

[26] See Hampton I, 201 Wis. 2d at 669.

[27] Id.

[28] Hampton II, 217 Wis. 2d at 621-24.  See also Anson, 282 Wis. 2d 629, ¶¶33-34.

[29] For a discussion of the numerous cases across the country on juror inattentiveness, see George L. Blum, Annotation, Inattention of Juror from Sleepiness or Other Cause As Ground for Reversal or New Trial, 59 A.L.R. 5th 1 (2003) (made current by weekly addition of relevant new cases).

¶111 The issue in the present case was raised in a substantially similar manner to that which occurred in Hampton I, in which the defendant also raised the issue orally at trial outside the presence of a jury. The Hampton I court determined that when there is a "sufficient demonstration of juror sleepiness," the circuit court should undertake further factual inquiry.[30]

¶112 In Hampton I, the attorney noticed a juror sleeping during witness testimony and raised the issue outside the presence of the jury.[31] Although the circuit court acknowledged that the juror was "drowsy" during portions of the testimony, it did not undertake any further inquiry into whether the juror was actually sleeping. The court of appeals concluded that there was a sufficient demonstration of juror sleepiness to warrant further factual inquiry and remanded the matter to the circuit court for an evidentiary hearing.[32]

¶113 Following a remand for an evidentiary hearing in Hampton I, the circuit court found that the juror was drowsy for ten minutes and fell asleep for one or two minutes.[33] On appeal from the evidentiary hearing, the court of appeals concluded in Hampton II that Hampton's due process rights to a fair trial

---

[30] Hampton I, 201 Wis. 2d at 673.

[31] Id. at 666-67.

[32] Id. at 673-74.

[33] Hampton II, 217 Wis. 2d at 622.

were not violated because the testimony that was missed was not pivotal to the case.[34]

¶114 In order for a circuit court to make a finding of fact regarding the inattentiveness of a juror, there must be facts in the record to support such a finding.

¶115 It is problematic for a circuit court to take judicial notice of the juror's inattentiveness or to rely on its own observations.

¶116 Case law from other jurisdictions suggests that a trial court may on "informed judicial knowledge" take judicial notice of the fact that a juror was sleeping when the circuit judge actually observes the juror sleeping.[35] Wisconsin case law, including Hampton I, warns that taking judicial notice of the fact that a juror was or was not sleeping without further inquiry is ordinarily inappropriate.[36]

¶117 The procedures for judicial notice are set forth in Wis. Stat. § 902.01 (2009-10). Judicial notice of whether a juror is sleeping does not fit easily with the kinds of adjudicative facts that may be judicially noticed under Wis. Stat. § 902.01(2). See Anson, 282 Wis. 2d 629, ¶33 & n.3 (holding that a circuit court cannot take judicial notice of facts it observes); Lemke v. Lemke, 2012 WI App 96, ¶21, 343

---

[34] Id. at 624.

[35] Hampton I, 201 Wis. 2d at 669 n.5.

[36] Id. at 671-72 (quoting United States v. Barrett, 703 F.2d 1076, 1083 (9th Cir. 1983)). See also Anson, 282 Wis. 2d 629, ¶¶33-34. Compare Hampton II, 217 Wis. 2d at 619-20.

Wis. 2d 748, 820 N.W.2d 470 (declaring that "[a] trial court sitting as a fact-finder may derive inferences from the testimony and take judicial notice of a fact that is not subject to reasonable dispute, but it may not establish as an adjudicative fact that which is known to the judge as an individual."); State v. Peterson, 222 Wis. 2d 449, 457-58, 588 N.W.2d 84 (Ct. App. 1998) (stating a trial court "may not establish as an adjudicative fact that which is known to the judge as an individual."); II McCormick on Evidence § 329 at 373 (John W. Strong ed., 5th ed. 1999) ("What a judge knows and what facts a judge may judicially notice are not identical data banks.").

¶118 In making the required factual determinations, circuit courts should take care not to act as witnesses. Although a circuit court may make credibility determinations when making its factual findings, the case law indicates a circuit court may not rely on its personal knowledge of events not appearing in the record.[37] A circuit court that relies on its own personal observations of events not in the record as the basis for a

---

[37] An example of this principle is set forth in Anson, which stated that a circuit court may not state "its opinion [that] the witness was being intimidated by the presence of several well-known gang members in the courtroom, if the presence and behavior of these individuals was not documented in the record." Anson, 282 Wis. 2d 629, ¶34 (emphasis in original).

Compare and contrast Hampton II, in which the court of appeals concluded that the circuit court's opinion about the attentiveness of the juror did not transform the circuit court into a material witness, requiring the judge's disqualification under Wis. Stat. § 757.19(2)(b). Hampton II, 217 Wis. 2d at 619-20.

factual finding "is essentially acting as a witness in the case by providing testimony."[38] Acting as a witness is contrary to Wis. Stat. § 906.05, which provides that a judge "presiding at the trial may not testify in that trial as a witness."

¶119 I recognize there is some tension within the case law regarding the circuit court's role in determining the fact of whether a juror was inattentive. I conclude that the safest and best practice is for the party challenging the juror's attentiveness to put evidence in the record so that the circuit court may make a factual determination of a juror's attentiveness (or lack thereof) on the basis of evidence in the record. A circuit court may then have to determine whether a juror's inattention prejudiced the defendant to the extent that the defendant did not receive a fair trial.

F

¶120 Here, the circuit court did not undertake any factual inquiry about the juror sleeping. It did not have to do so. Instead the circuit court determined that even if the juror were sleeping, the defendant was not prejudiced. In making that determination, the circuit court recognized that the ultimate focus of the analysis is to determine whether a defendant is prejudiced.[39] As the Hampton I court noted, "it is universally recognized that before inattentiveness warrants a mistrial,

---

[38] Anson, 282 Wis. 2d 629, ¶33.

[39] Hampton I, 201 Wis. 2d at 668.

26

there must be a determination regarding prejudice."[40] The same logic holds true regarding a motion to strike a sleeping juror.

¶121 To satisfy the prejudice requirement, a defendant must establish that the juror missed enough of the proceeding to prejudice the defense.[41] Generally, a defendant is prejudiced if a juror misses hearing "material testimony."[42] Likewise, a defendant can be prejudiced by a sleeping juror if the juror misses a "pivotal" or "significant" part of the case.[43]

¶122 In the present case, there is no indication that the sleeping juror missed a pivotal or significant portion of the proceeding. Furthermore, it is undisputed that the juror heard all material testimony. The defendant has therefore failed to establish that the allegedly sleeping juror was prejudicial to the defense.

¶123 Because there is no indication that the defendant was prejudiced, the circuit court's discretionary refusal to strike the juror was reasonable. Therefore, I conclude that the circuit court did not erroneously exercise its discretion when it denied the defendant's motion to strike.

¶124 Unfortunately, the majority opinion's analysis is confusing and fails to provide guidance on how circuit courts should proceed when confronted with the challenge that the

---

[40] Id. at 670.

[41] Id. at 668.

[42] Id. at 668.

[43] Hampton II, 217 Wis. 2d at 621, 624.

defendant's constitutional right to an impartial jury is being denied based on an assertion that a juror was sleeping.

¶125 For the reasons set forth, I write separately.

¶126 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.